OPINION
{¶ 1} Defendant-Appellant, Jessica A. Smith, (hereinafter referred to as "Mother") appeals the judgment of the Seneca County Court of Common Pleas, Domestic Relations Division, granting legal custody of her minor children to their paternal grandfather and step-grandmother, Appellees/Intervenors, Charles E. and Penny L. Boyd (hereinafter referred to as "Grandparents"). On appeal, Mother argues that the trial court's decision to grant Grandparents legal custody of her minor children was against the manifest weight of the evidence; that the trial court erred in allowing Appellees to proceed after failing to file an affidavit in compliance with R.C. 3109.27; and, that the trial court erred in denying her request for a continuance when the Guardian Ad Litem failed to appear and in admitting the Guardian Ad Litem's report. Based on the following, the judgment of the trial court is affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
 {¶ 2} Mother and Defendant/Appellee, Michael C. Boyd, (hereinafter referred to as "Father") were married in July of 1994 and together they had three children.[1] In January of 2000, their marriage was dissolved and a separation agreement was approved and confirmed. Under their separation agreement, Mother and Father agreed to designate Mother the residential parent and legal custodian of the children, while Father was granted companionship rights with the children.
 {¶ 3} In February of 2000, Mother moved to Michigan after gaining court approval. Additionally, the record reflects numerous motions filed by both Mother and Father between 2000 and 2003, seeking redress for the failure of the other party to abide by the orders of the court regarding visitation and child support payments.
 {¶ 4} In March of 2003, Grandparents and Heather Howard, the children's paternal aunt, separately moved to intervene. In their motion, Grandparents requested the trial court to appoint a Guardian Ad Litem, to assign a Court Appointed Special Advocates (C.A.S.A.) volunteer and involve the Seneca County Department of Job and Family Services, to order that the children be placed in counseling, and to order a set visitation schedule.
 {¶ 5} In April of 2003, the magistrate granted Grandparents' motion to intervene and denied Howard's motion.
 {¶ 6} In May of 2003, the magistrate ordered C.A.S.A. to complete a home investigation and an investigation of Mother and Father.
 {¶ 7} In June of 2003, the magistrate granted Grandparents separate companionship rights with the children.
 {¶ 8} In August of 2004, Grandparents moved to become the residential parents and legal custodians of the children.
 {¶ 9} In September of 2004, Phyllis A. Boyd, the children's paternal grandmother, moved to intervene in the event Grandparents were named residential parents and legal custodians of the children. Phyllis later moved to amend her motion to request that she be named custodial parent of the children if neither Mother nor Father were named residential parent and legal custodian. Additionally, Father filed a separate motion to have himself, his current wife, and Phyllis be named custodial parents of the children. Also, Mother moved for the appointment of a Guardian Ad Litem. The trial court granted the motion for the appointment of a Guardian Ad Litem and appointed Ray Gittinger. Finally, an in camera interview of the children was conducted.
 {¶ 10} On October 15, 2004, a hearing on the pending motions was held, which was continued until December 2, 2004. As a result of this first day of hearings, the magistrate found, among other things, that Phyllis' motion for leave to intervene was not in the best interests of the children.
 {¶ 11} On October 19, 2004, Father filed a child custody residency affidavit required to be filed under R.C. 3109.27.[2]
 {¶ 12} On December 2, 2004, the hearing on the pending motions was held and was continued until January 10, 2005.
 {¶ 13} On January 10, 2005, the trial court ordered that Mr. Gittinger was released from his duties as Guardian Ad Litem for the children, because he had no contact with the children since before the December 2, 2004 hearing. Additionally, the trial court heard arguments on the pending motions.
 {¶ 14} On February 11, 2005, the magistrate issued its decision granting Grandparent's motion to become the residential parents and legal custodians of the children.
 {¶ 15} On February 18, 2005, Mother filed her objections to the magistrate's decision. Additionally, the trial court issued an interim order, which found that the best interests of the children required immediate relief and ordered that the change in custody ordered by the Magistrate shall not be stayed, pending the consideration of Mother's objections.
 {¶ 16} On November 30, 2005, the trial court denied Mother's objections and approved the Magistrate's February 2005 decision as an order of the court.
 {¶ 17} It is from this judgment Mother appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO THE APPELLANT BY GRANTING APPELLEE INTERVENOR'S (SIC.) MOTION TO GRANT THE APPELLEE INTERVENORS (SIC.) LEGAL CUSTODY OF APPELLANT'S MINOR CHILDREN AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 Assignment of Error No. II THE TRIAL COURT COMMITTED ERROR PREJUDICIAL TO APPELLANT BY ALLOWING APPELLEES TO PROCEED AFTER OBJECTION TO THEIR FAILURE TO FILE AN AFFIDAVIT IN COMPLIANCE WITH SECTION 3109.27 OF THE OHIO REVISED CODE.
 Assignment of Error No. III[3] THE TRIAL COURT ERRED IN DENYING THE REQUEST FOR A CONTINUANCE BY APPELLANT WHEN THE GUARDIAN AD LITEM FAILED TO APPEAR AND ADMITTING THE GUARDIAN'S REPORT.
 {¶ 18} Due to the nature of Mother's assignments of error, we will review them out of order.
 Assignment of Error No. II {¶ 19} In her second assignment of error, Mother argues that the trial court erred in allowing Grandparents and Father to proceed without complying with R.C. 3109.27. Specifically, Mother asserts that the trial court erred in allowing Father to file the required information under R.C. 3109.27, after Grandparents' and Father's motions for custody of the children had been filed. We disagree.
 {¶ 20} R.C. 3109.27, which has been amended and recodified, provided, in pertinent part:
 (A) Each party in a parenting proceeding, in the party's first pleading or in an affidavit attached to that pleading, shall give information under oath as to the child's present address, the places where the child has lived within the last five years, and the name and present address of each person with whom the child has lived during that period. In this pleading or affidavit, each party also shall include all of the following information:
 (1) Whether the party has participated as a party, a witness, or in any other capacity in any other litigation, in this or any other state, that concerned the allocation, between the parents of the same child, of parental rights and responsibilities for the care of the child and the designation of the residential parent and legal custodian of the child or that otherwise concerned the custody of the same child;
 (2) Whether the party has information of any parenting proceeding concerning the child pending in a court of this or any other state;
 (3) Whether the party knows of any person who is not a party to the proceeding and has physical custody of the child or claims to be a parent of the child who is designated the residential parent and legal custodian of the child or to have parenting time rights with respect to the child or to be a person other than a parent of the child who has custody or visitation rights with respect to the child;
 (4) Whether the party previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child or previously has been determined, in a case in which a child has been adjudicated an abused child or a neglected child, to be the perpetrator of the abusive or neglectful act that was the basis of the adjudication.
 (B)If the declaration under division (A)(1), (2), (3), or (4) of this section is in the affirmative, the court may require the declarant to give additional information under oath. The court may examine the parties under oath as to details of the information furnished and as to other matters pertinent to the court's jurisdiction and the disposition of the case.
 (C)Each party has a continuing duty to inform the court of any parenting proceeding concerning the child in this or any other state of which the party obtained information during this proceeding.
 {¶ 21} The term "parenting proceeding" was defined as a proceeding "in which a parenting determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." R.C. 3109.21(C).[4]
 {¶ 22} The purpose of the affidavit required under R.C. 3109.27 is to avoid jurisdictional disputes and conflicts with other courts and to facilitate the speedy resolution of custody matters so that children do not become victims of jurisdictional "tugs of war." In re Palmer (1984),12 Ohio St.3d 194, 196. By the submission of an affidavit, the trial court is made aware at the onset of other proceedings affecting its jurisdiction. In re Porter (1996), 113 Ohio App.3d 580, 584. We note that the affidavit also requires the parties to provide additional information that may be pertinent to an informed decision granting custody and/or companionship, such as whether any party has been convicted of, or found to be the perpetrator of, abuse or neglect of children.
 {¶ 23} According to R.C. 3109.27, a jurisdictional affidavit should be filed in the parties' first pleadings or in an affidavit attached to that pleading. However, "[t]he requirement that an affidavit be filed in a party's first pleading [under R.C. 3109.27] has been relaxed to allow amended pleading or subsequent filings to include the affidavit information." In re Porter, 113 Ohio App.3d at 584 (citations omitted). This Court has previously permitted the delayed filing of the affidavit, finding that "[although the filing of an affidavit pursuant to R.C. 3109.27 is a jurisdictional requirement in a child custody proceeding, the requirement that the affidavit be filed with the complaint is directory, not mandatory." Cook v. Court of Common Pleas (1986),28 Ohio App.3d 82. See also In re Palmer, 12 Ohio St.3d at 197.
 {¶ 24} Upon our review of the record, we note that at the October 15, 2004 hearing, prior to hearing testimony, Mother's counsel moved to dismiss both Father's and Grandparent's motions for permanent custody, because each motion failed to comply with the requirements of R.C. 3109.27 and neither motion was signed under oath. In response to Mother's motion, Father, who was not represented by counsel, argued that Mother's motion should be denied, because in previous cases, the Court provided that "[it] would maintain all jurisdiction over * * * this and all proceedings until the children * * * are 18 or emancipated." (October 15, 2004 Tr. p. 13). Additionally, in response to Mother's motion, Grandparents, who were not represented by counsel, indicated that they believed that the trial court already had the information that was required under R.C. 3109.27 and it was unnecessary to put the information in the motion "since this court is more then (Sic.) aware of where the children live." (October 15, 2004 Tr. p. 13).
 {¶ 25} The trial court proceeded to have Father and Grandparents testify under oath that they signed their motions for custody and that the motions were true and accurate to be test of their knowledge and ability. Further, the trial court noted that Mother was not prejudiced by the failure of Father or Grandparents to file an affidavit under 3109.27, because "she has been the children's residential parent and legal custodian[, so] she knows where the children have lived for the last five years" (October 15, 2004 tr. p. 19) and that it contacted the juvenile court in Seneca County, the Department of Job and Family Services in Kentwood, Michigan, and the Hancock County Department of Job and Family Services, but none would take the case. Finally, the trial court indicated that it was going to have Father and Grandparents complete a R.C. 3109.27 affidavit during the lunch hour and would provide a copy of the affidavits to the parties.[5]
 {¶ 26} While we agree that Father and Grandparents should have filed a jurisdictional affidavit under R.C. 3109.27 in their first pleadings or in an affidavit attached to those pleadings, we find that any error committed by the trial court in allowing Father and Grandparents to belatedly comply with R.C. 3109.27 was harmless error. Additionally, we agree with the trial court that Mother was not prejudiced, because "she has been the children's residential parent and legal custodian [so,] she knows where the children have lived for the last five years." (October 15, 2004 Tr. p. 19). Furthermore, in her brief, Mother has not specifically demonstrated how the trial court's decision has prejudiced her other than that the trial court failed to follow a strict interpretation of R.C. 3109.27.
 {¶ 27} Accordingly, Mother's second assignment of error is overruled. Assignment of Error No. III {¶ 28} In her third assignment of error, Mother argues that the trial court erred in denying her request for a continuance when the Guardian Ad Litem failed to appear at the final hearing and that the trial court erred in admitting the Guardian Ad Litem's report. We disagree.
 {¶ 29} For simplicity, we start with the trial court's denial of Mother's request for a continuance. Our review of this issue begins by noting that the decision to grant or deny a continuance is within the sound discretion of the trial court. State v. Bryan, 101 Ohio St.3d 272,2004-Ohio-971, at ¶ 57. Thus, such a decision will not be disturbed on appeal absent an abuse of that discretion. Id. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 30} This Court has previously held that "[t]he review of a decision on a motion for continuance requires the appellate court to apply a balancing test, weighing the trial court's interest in controlling its own docket, including facilitating the efficient dispensation of justice, versus the potential prejudice to the moving party." Burton v.Burton, 132 Ohio App.3d 473, 476, 1999-Ohio-844. We further found that "[t]here are objective factors that a court must consider in determining whether to grant a continuance." Id. Among these factors are the length of the delay requested, whether previous continuances have been granted, the inconvenience to the parties, witnesses, attorneys, and the court, whether the request is reasonable or purposeful and contrived to merely delay the proceedings, and whether the movant contributed to the circumstances giving rise to the request. Id., citing State v.Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 31} In the case sub judice, the Guardian Ad Litem failed to appear at the third day of hearings, in January of 2005. However, the Guardian Ad Litem's report and recommendation was prepared prior to the December 2004 hearing. Additionally, the Guardian Ad Litem was present for the first two days of trial and testified during the December 2004 hearing. During that hearing, the Guardian Ad Litem was cross-examined and subjected to recross-examination twice by Mother's counsel. Additionally, the Guardian Ad Litem testified and identified reports and evaluations, which served as the basis for his recommendations, and described the extent of his investigation.
 {¶ 32} At the January 2005 hearing, all of the parties agreed that the Guardian Ad Litem failed to meet with any of the parties since the December 2004 hearing. The trial court noted that it "[did not] know what [the Guardian Ad Litem] has to contribute other than this (Sic.) opinion based on what he hears in court today. * * * [If] he had a contact with anybody since we were here the last time I would have thought it was important, but he hasn't had any contact with anybody." (Jan. 10, 2005 Trial Tr. p. 19-20).
 {¶ 33} Given these facts, particularly the lengthy litigation, the lack of new information that the Guardian Ad Litem would have been able to provide, and Mother's opportunity at a prior hearing to cross-examine the Guardian Ad Litem,
we cannot find that the trial court abused its discretion in denying Mother's motion for a continuance.
 {¶ 34} With respect to the admission of the Guardian Ad Litem's report and recommendation, it is well established that a trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice. Rigby v.Lake County (1991), 58 Ohio St.3d 269, 271. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore, 5 Ohio St.3d at 219.
 {¶ 35} At the January 2005 hearing, Grandparents moved for admission of the Guardian Ad Litem's report and recommendation dated October 15, 2004 into evidence. Mother's counsel objected, arguing that she wanted to inquire into whether the Guardian Ad Litem had done anything to further his duties. However, as noted above, the parties acknowledged that the Guardian Ad Litem had not met with the children after the December 2004 hearing. Additionally, Mother's counsel had the opportunity at the December 2004 hearing to cross-examine and recross-examine the Guardian Ad Litem about his report and recommendation. Therefore, we do not find that the trial court abused its discretion in admitting the Guardian Ad Litem's report and recommendation into evidence.
 {¶ 36} Accordingly, Mother's third assignment of error is overruled.
 Assignment of Error No. I {¶ 37} In her first assignment of error, Mother argues that the trial court's judgment was against the manifest weight of the evidence.
 {¶ 38} Trial courts are vested with broad discretion in determining the allocation of parental rights and responsibilities for the care of minor children. Miller v. Miller (1988), 37 Ohio St.3d 71, 74. Therefore, a reviewing court must uphold the trial court's decision in such cases absent an abuse of discretion. Masters v. Masters,69 Ohio St.3d 83, 85, 1994-Ohio-483. An abuse of discretion will only be found where the decision is unreasonable, arbitrary, or unconscionable.Blakemore, 5 Ohio St.3d at 219.
 {¶ 39} "This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures and attitude. * * *. This is especially true in a child custody case, since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." Blaker v. Wilhelm, 6th Dist. No. WD-04-003, 2005-Ohio-317, at ¶ 10, quoting In re LS, 152 Ohio App.3d 500, 2003-Ohio-2045, at ¶ 12. Accordingly, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Const. Co. (1978),54 Ohio St.2d 279, syllabus.
 {¶ 40} Child-custody disputes in Ohio fall within the purview of one of two statutes, R.C. 3109.04 or R.C. 2151.23, depending on where the case originates. In re S.M., 160 Ohio App.3d 794, 2005-Ohio-2187, at ¶ 8. R.C. 3109.04 provides the procedures and rules for custody disputes arising out of the domestic relations court, while R.C. 2151.23(A)(2) vests the juvenile court with exclusive jurisdiction "to determine the custody of any child not a ward of another court of this state."
 {¶ 41} Regardless of where the custody case originates, "it is well recognized that the right to raise a child is an `essential' and 'basic' civil right." In re Hayes (1997), 79 Ohio St.3d 46, 48, citing In reMurray (1990), 52 Ohio St.3d 155, 157. Thus, "a parent's right to the custody of his or her child has been deemed `paramount'" when the parent is a suitable person. In re Hayes, 79 Ohio St.3d at 48 (citation omitted); In re Murray, 52 Ohio St.3d at 157. Because a parent has a fundamental liberty interest in the custody of his or her child, this important legal right is "protected by law and, thus, comes within the purview of a `substantial right[.]'" In re Murray, 52 Ohio St.3d at 157. Based upon these principles, the Ohio Supreme Court has determined that a parent "must be afforded every procedural and substantive protection the law allows." In re Hayes, 79 Ohio St.3d at 48 (citation omitted). Accordingly, in a child custody proceeding between a parent and a nonparent:
 [A] court may not award custody to the nonparent "without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child."
In re Hockstok, 98 Ohio St.3d 238, 2002-Ohio-7208, at ¶ 17 quotingIn re Perales (1977), 52 Ohio St.2d 89, syllabus. Additionally, if a court concludes that any one of these circumstances describes the conduct of a parent, the parent may be adjudged unsuitable, and the state may infringe upon the fundamental parental liberty interest of child custody. In re Hockstock, 2002-Ohio-7208, at ¶ 17.
 {¶ 42} Generally, the determination of unsuitability has been "a necessary first step in child custody proceedings between a natural parent and nonparent." Id. at 18. Specifically, the Ohio Supreme Court has held that an unsuitability determination is required under R.C. 2151.23(A)(2) before awarding child custody to a nonparent in a legal custody proceeding. In re Perales, 52 Ohio St.2d 89, syllabus; see, also, In re Hockstock, 2002-Ohio-7208, at 19. Additionally, the Ohio Supreme Court has held that when an original award of custody is determined under R.C. 3109.04, a finding of unsuitability is required before awarding child custody to a nonparent. Masitto v. Masitto (1986),22 Ohio St.3d 63, 65; see In re Hockstok, 2002-Ohio-7208, at ¶¶ 20-26. But see Boyer v. Boyer (1976), 46 Ohio St.2d 83, paragraph one of the syllabus.
 {¶ 43} However, the Ohio Supreme Court has also held that an unsuitability finding is not always required when granting custody to a nonparent instead of either parent. Specifically, the Ohio Supreme Court has held that in a child custody dispute between parents and nonparents, originating from a divorce proceeding, R.C. 3109.04(D)(2) allows a court to grant custody of a child to a nonparent relative if the court finds that it is not in the best interest of the child for either parent to retain custody. Boyer, 46 Ohio St.2d 83, paragraph one of the syllabus. Also, a determination that the noncustodial parent is unsuitable is not required when granting legal custody to a nonparent, if a juvenile court adjudicates the child abused, neglected, or dependent. In re C.R.,108 Ohio St.3d 369, 2006-Ohio-1191, paragraph three of the syllabus.
 {¶ 44} Additionally, this Court has held that an unsuitability determination is required when awarding a child to a nonparent nonrelative. In re Dunn (1992), 79 Ohio App.3d 268, 270. In In reDunn, mother and father were divorced in 1984 and father was awarded custody of their two children, while mother was awarded liberal visitation rights with the children. Id. at 269. Subsequently, both mother and father remarried. Id. After father unexpectedly died in 1991, the children's stepmother (father's widow) sought temporary custody of the children and later sought permanent custody of the children. Id. The trial court granted stepmother's motion for permanent custody. Id. This Court determined that the trial court was required to find the children's mother unsuitable prior to awarding custody of the children to the children's stepmother. Id. at 271. However, this Court noted that "if the unsuitability is based on detriment to the child, courts must measure suitability in terms of the harmful effect on the child, not in terms of society's judgment of the parent." Id. citing In rePerales, 52 Ohio St.2d at 98. And, in affirming the trial court, this Court found that the "court could find by a preponderance of the evidence that [mother] was unsuitable, in terms of the detrimental effect on the child, not in terms of society's judgment of [mother], and the court properly awarded custody to [stepmother]." Id. at 272.
 {¶ 45} Nevertheless, this Court and the Ohio Supreme Court have never determined whether an unsuitability finding is necessary prior to awarding nonparents custody of a child in a situation similar to the facts currently before us. As noted above, in this case, Mother was originally designated the residential parent and legal custodian of the children, when Mother and Father were divorced in January of 2000, and still was residential parent and legal custodian, when nonparent relatives, Grandparents, moved to modify the original custody order to designate them the residential parents and legal custodians of the children.
 {¶ 46} In making our decision, we are persuaded by the Ohio Supreme Court's consistent requirement that a trial court make an unsuitability finding prior to awarding custody of a child to a nonparent. In In rePerales, the Ohio Supreme Court noted Judge Ashburn's decision inClark v. Bayer (1877), 32 Ohio St. 299, wherein he acknowledged that "'in all cases of controverted right to custody, the welfare of the minor is the first to be considered,' [and] and that parents who are 'suitable' persons have a `paramount' right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children."In re Perales, 52 Ohio St.2d at 97-98 quoting Bayer, 32 Ohio St. at 310. (Footnote omitted). The unsuitability requirement in Perales was also noted as a "general rule" in Masitto. Masitto, 22 Ohio St.3d at 65. However, we are also aware that the Masitto Court provided, "[O]nce an original custody award has been made, the general rule is that such award will not be modified unless `necessary to serve the best interests of the child.'" Id. quoting R.C. 3109.04(B). Nevertheless, theMasitto Court upheld the trial court's finding that "an unsuitability determination had been made when the father had agreed to the probate court's guardianship order * * * and later reaffirmed this relinquishment through the divorce decree." In re Hockstock, 2002-Ohio-7208, at ¶ 22 citing Masitto, 22 Ohio St.3d at 66. Additionally, the Masitto Court stated, "An additional factor to consider here is that the guardianship status of the minor child could not have existed unless the probate court found that the `parents are unsuitable persons to have the custody and tuition of such minor, or whose interests, in the opinion of the court, will be promoted thereby.'" Masitto, 22 Ohio St.3d at 66 quoting R.C. 2111.06.
 {¶ 47} Further, the Ohio Supreme Court discussed the importance of itsIn re Perales and Masitto decisions in In re Hockstock. The In reHockstock Court stated,
 The important principle that harmonizes [In re] Perales and Masitto is that regardless of which could had jurisdiction, the juvenile or the domestic relations division of the court of common pleas, this court recognized the overriding importance of a trial court making a parental unsuitability determination on the record before awarding custody away from a natural parent to a nonparent. These two cases demonstrate the significance of the fundamental rights of natural parents in child custody cases between parents and nonparents.
In re Hockstock, 2002-Ohio-7208, at ¶ 24.
 {¶ 48} Accordingly, we hold that when a nonparent moves to modify an original custody decree, arising out of a divorce proceeding which granted legal custody to a child's natural parent, the trial court shall not award a nonparent legal custody of the child or children until it has first determined that both parents are unsuitable under In rePerales.
 {¶ 49} Applying our holding to the facts in the case sub judice, we find that the trial court failed to make the requisite finding of unsuitability as required by In re Perales. This Court has found that a trial court is not required to use the word "unsuitable" or some variation thereof in its findings in order to meet the requirements ofIn re Perales. In re Wright, 3d Dist. No. 4-01-20, 2002-Ohio-404; see also In re Frateschi (June 8, 1993), 7th Dist. No. 92-C-58 ("The holding in [In re] Perales does not require a specific finding by the court that a parent is unsuitable. Rather, [In re] Perales holds that a preponderance of the evidence must indicate that the parent is unsuitable.") However, the "record must reflect that the trial court applied the [In re] Perales standard and [make] sufficient factual findings to support it." In re Wright, supra
 {¶ 50} Unlike the "best interest of the child" test enunciated in R.C. 3109.04, which looks to the best custodial situation for the child and places the child there, In re Perales presumes parental custody to be in the child's best interest. In re Holycross (Feb. 24, 1999), 3d Dist. No. 13-98-60; In re Porter, 113 Ohio App.3d at 589. However, that presumption is overcome if the trial court determines by a preponderance of the evidence that, for example, placement with a parent will be detrimental to the child. In re Holycross, supra; see In re Dunn,79 Ohio App.3d at 271 citing In re Perales, 52 Ohio St.2d at 98 ("[I]f the unsuitability is based on detriment to the child, courts must measure suitability in terms of the harmful effect on the child, not in terms of society's judgment of the parent.") Thus, under In re Perales, "parents who are `suitable' persons have a `paramount' right to the custody of their children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children."In re Perales, 52 Ohio St.2d at 97.
 {¶ 51} Here, the magistrate's decision provided, in paragraph 11:
 Parents who are found by the court to be suitable parents have a paramount right to custody of their minor children. In re Perales (1977) 52 Ohio St.2d 89. However, the right of custody by the biological parents is not absolute. The Court "may commit the child to a relative of the child where the court finds that custody to neither parent is in the best interest of the child." Boyer v Boyer (1976) 46Ohio St.2d (Sic.) 83, 84. The Boyer Court further held, "The parents have a right to custody which transcends consideration of the child's best interest, is recognition that the child's right to a suitable custodian and parental rights, when not in harmony, are competing interests, requiring that one give way to the other." Id at 87. This Court finds that neither parent, based on the findings above, are suitable parents to have custody of these three children.
(Feb. 11, 2005 Magistrate's Dec. p. 6). Reviewing the magistrate's decision, each of the "findings above" provides a finding that is termed either "in the best interest of the minor children" or "not in the best interest of the minor children." (Feb. 11, 2005 Magistrate's Dec. pp. 3-6). Because these findings appear to be applying the "best interests" test instead of the "unsuitability" test, we find that the trial court's findings are insufficient to satisfy this Court that a preponderance of the evidence showed that either parent was an unsuitable parent, as required by In re Perales.
 {¶ 52} Accordingly, Mother's first assignment of error is sustained.
 {¶ 53} Having found no error prejudicial to appellant herein, in the particulars assigned and argued in her second and third assignments of error, but having found error prejudicial to appellant, in the particulars assigned and argued in her first assignment of error, we affirm in part, reverse in part, and remand the matter for further proceedings consistent with this opinion. Judgment Affirmed in Part,Reversed in Part, and Cause Remanded. BRYANT, P.J., concurs. CUPP, J.,concurs separately.
 {¶ 54} CUPP, J., concurring separately. Although the trial court's intermediate factual findings leading to its conclusion, as noted in the opinion supra, did not utilize the proper standard for the issues involved in this case, it is also apparent, from the magistrate's recitation of the facts put into evidence, that there is sufficient evidence from which the trial court could, if it determined to do so, conclude that both parents are unsuitable to have the custody of the children.
[1] Mother and Father had three children born the issue of their marriage: Ashlee A. Boyd, born September 8, 1995; Dakota M. Boyd, born February 15, 1997; and, Dallas M. Boyd, born February 15, 1997. (Hereinafter jointly referred to as "the children").
[2] In April of 2005, this section was amended and recodified R.C. 3127.23 by 150 v S 185.
[3] We note that in the "Table of Contents" of Mother's brief, the third assignment of error reads, "THE COURT COMMITTED PREJUDICAL ERROR IN FINDING THE DEFENDANT-APPELLANT IN CONTEMPT OF COURT WHERE THE EVIDENCE PRESENTED SHOWED DEFENDANT HAD SUBSTANTIALLY PURGED HIMSELF FROM CONTEMPT." However, this assignment of error is neither briefed nor argued in Mother's brief, accordingly, we disregard this assignment of error under App. R. 12(A)(2), and instead, decide the assignment of error that is briefed and argued in Mother's brief.
[4] R.C. 3109.21 was repealed in April of 2005 by 150 v S 185. See now R.C. 3127.01.
[5] We note that only Father's R.C. 3109.27 affidavit is included in the record and that the affidavit is not notarized.