[Cite as *In re D.C.J.*, 2012-Ohio-4154.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 97681 and 97776**

# IN RE: D.C.J.

# A Minor Child

# (Appeal by Maternal Grandparents and Guardian Ad Litem)

## JUDGMENT:
## REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. CU 03109953

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Cooney, J.

**RELEASED AND JOURNALIZED:** September 13, 2012

**ATTORNEYS FOR APPELLANTS**

**For Maternal Grandparents**

John H. Lawson
Brownhoist Building
4403 St. Clair Avenue
Cleveland, OH   44103

**For Guardian Ad Litem**

Pinkie Lue Clark
P.O. Box 93184
Cleveland, OH   44101


**ATTORNEYS FOR APPELLEE**

Joseph J. Triscaro
Robert P. DeMarco
DeMarco & Triscaro, Ltd.
30505 Bainbridge Road
Suite 225
Solon, OH   44139


**Also listed:**

**For Amicus Curiae Advisory Committee, G.A.L. Project**

Steven E. Wolkin
820 W. Superior Avenue
Suite 510
Cleveland, OH   44113

SEAN C. GALLAGHER, J.:

{¶1} This is a consolidated appeal arising from the proceedings in the Cuyahoga County Court of Common Pleas, Juvenile Division, on father's motion to change allocation of parental rights and responsibilities in regard to his minor child, D.C.J., and the maternal grandparents' motion for legal custody. In 8th Dist. No. 97681, D.C.J.'s maternal grandparents appeal the judgment of the trial court that designated father as the residential parent and legal custodian of D.C.J. We reverse this decision and remand the case for a new trial. In 8th Dist. No. 97776, the guardian ad litem appeals the lower court's determination of guardian ad litem fees. We reverse this determination and remand for a hearing and redetermination of guardian ad litem fees.

{¶2} D.C.J. was born in September 2003. At the time of D.C.J.'s birth, mother and father, who were not married, resided with the maternal grandparents (hereafter "appellants" or "the grandparents"). After a short time, father moved out of the grandparents' home. He eventually permanently relocated to Columbus, Ohio.

{¶3} Mother and father entered an agreed shared parenting plan on February 25, 2004. They entered a second shared parenting plan on December 21, 2005. Both plans were adopted by the court. Father was designated as the nonresidential parent and legal custodian of D.C.J. He was granted regular visitation, which was increased under the second plan.

{¶4} In June 2008, mother suffered a massive stroke and was hospitalized. She passed away on January 18, 2009.

{¶5} On August 7, 2008, father filed a motion to change allocation of parental rights and responsibilities. He also filed a motion for temporary custody. On September 15, 2008, the grandparents filed a motion to intervene and motion for temporary custody, and a motion for legal custody. On January 20, 2009, the grandparents filed a motion for temporary, emergency custody and motion for legal custody. The trial court granted the grandparents temporary custody of D.C.J. and awarded father temporary parenting time.

{¶6} D.C.J. lived with his mother at the grandparents' house for all but one year when mother and D.C.J. lived in a nearby condominium. He continued to reside with the grandparents during mother's hospitalization and after her death. D.C.J. attends school in the grandparents' school district. There was evidence demonstrating that D.C.J. suffers from behavioral problems and has special needs. He has received therapy, counseling, and psychiatric services.

{¶7} Father has a criminal record, which includes several alcohol-related incidents. He tested positive for cocaine during the pendency of the case in 2009. However, subsequent tests were negative, and the court terminated continued drug testing on May 19, 2010. The trial court required father to participate in a drug and alcohol assessment, which was performed by Netcare of Ohio. Netcare found father to be on the level of "Axis 1:305:Alcohol Abuse."

{¶8} The trial court denied the grandparents' requests for an in camera interview

of the child. The court delayed ruling on numerous motions and continued the trial date several times. The matter finally proceeded to trial in April and May 2011. The court required counsel for the grandparents to conduct the examination of father in the form of a direct examination. The court limited the report and testimony of Dr. Douglas Waltman, the court-appointed evaluator. The court also excluded portions of the guardian ad litem's report and testimony. On December 6, 2011, more than three years after the matter began, the trial court issued a judgment designating father as the residential parent and legal custodian of D.C.J. The grandparents timely appealed the trial court's decision.

**{¶9}** On December 1, 2011, the trial court issued a ruling on the motion for approval of guardian ad litem fees. The trial court approved the award as modified by application of reduced rates. The guardian ad litem appealed this ruling.

Appeal No. 97681

**{¶10}** We begin by addressing the assignments of error presented in the grandparents' appeal. The first assignment of error provides as follows:

> [I.] The trial court erred when it failed to maintain a complete audible record of proceedings.

**{¶11}** Appellants argue that there were 148 "inaudibles" in the voluminous transcript of proceedings in the trial court, that portions of the transcript are inaccurate and unintelligible, and that a lengthy speaking objection is missing from the transcript.

**{¶12}** Juv.R. 37(A) states:

> [t]he juvenile court shall make a record of adjudicatory and dispositional

proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates. In all other proceedings governed by these rules, a record shall be made upon request of a party or upon motion of the court. The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device.

{¶13} When a trial court records an entire proceeding that results with portions of the record being inaudible, there is no violation of Juv.R. 37(A) so long as there is no difficulty in fully understanding the development of the proceedings regarding the facts at issue. *In re L.P.R.*, 11th Dist. No. 2010-L-144, 2012-Ohio-1671, ¶ 33-35; *In re Mitchell*, 11th Dist. Nos. 2002-L-078 and 2002-L-079, 2003-Ohio-4102, ¶ 26-30.

{¶14} Assuming the proceedings in this private custody matter were to be recorded pursuant to Juv.R. 37(A), the record reflects that the juvenile court recorded the entire proceeding. Although the record contains a number of inaudibles, after reviewing the entire transcript, there is no difficulty in fully understanding the development of the proceedings regarding the facts at issue. Thus, we find no violation of Juv.R. 37(A) and overrule the first assignment of error.

{¶15} Appellants' second assignment of error provides as follows:

[II.] The trial court abused its discretion when it ruled in contravention of Ohio Evidence Rule 611 that appellants had to conduct the examination of an adverse party in the form of a direct examination and allowed the appellee to conduct a cross-examination of his own client.

{¶16} The witness lists filed by the grandparents' attorney indicated calling father upon cross-examination. However, at the time of trial, the court expressed its belief that

because "you're calling him in your case in chief, then you direct him."  Although the objection was omitted from the transcript, several affidavits were submitted that indicated the grandparents' attorney protested this determination.

{¶17} The examination of father began in the form of a direct examination.  While leading questions also were used in the course of father's examination and greater leeway was given on redirect, the overall examination nonetheless was impeded by the trial court's ruling.  Further, the trial court permitted father's attorney to cross-examine his own client.

{¶18} Later, the grandparents' attorney moved to strike all of father's testimony and to permit the use of leading questions in direct examination of father.  Counsel expressed that this is an adversarial case in which his ability to confront father and his trial strategy had been impaired and that the grandparents were denied a fair hearing.  The trial court denied the oral motion.  The trial court also denied a motion for new trial that was filed by the grandparents.

{¶19} Evid.R. 611(C) provides the following:

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony.  Ordinarily leading questions should be permitted on cross-examination.  When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

It is within the trial court's discretion to allow or refuse leading questions in the examination of a witness.  *Ramage v. Cent. Ohio Emergency Servs. Inc*., 64 Ohio St.3d 97, 1992-Ohio-109, 592 N.E.2d 828, paragraph six of the syllabus.  "'Abuse of

discretion' implies that the court acted in an unreasonable, arbitrary, or unconscionable manner." *Banford v. Aldrich Chem. Co.*, 126 Ohio St.3d 210, 2010-Ohio-2470, 932 N.E.2d 313, ¶ 38.

{¶20} In this case, the trial court improperly directed the grandparents' attorney to examine father in the form of a direct examination and later admonished counsel that he could be held in contempt. The trial court's decision was made upon its misconception that leading questions were not permitted in the case-in-chief. Father was clearly an adverse party to whom the exception in Evid.R. 611(C) applied. Further, the court permitted a cross-examination by father's own attorney, yet the rule disallows leading one's own witness "except as may be necessary to develop the witness' testimony." While the trial court later revisited the issue and permitted some leading questions on redirect examination, the grandparents' ability to present their case nonetheless was impeded.

{¶21} This was a custody dispute, and father was shown to have a strong aversion to the grandparents. The staff notes to Evid.R. 611 recognize the trial court's discretion "in applying and relaxing the general rules for the introduction of testimony according to circumstances to achieve justice" and the court's "active duty to aid in eliciting truth so that the verdict of the jury may approach the ends of justice." In this case, the trial court failed to abide by these principles.

{¶22} Accordingly, because the trial court arbitrarily dictated the form of examination without proper regard to Evid.R. 611(C)'s exception for adverse witnesses,

we find the court abused its discretion. Appellants' second assignment of error is sustained.

**{¶23}** Appellants' third assignment of error provides as follows:

[III.] The trial court abused its discretion during a bench trial by refusing to admit appellee's mug shot into evidence.

**{¶24}** A trial court has broad discretion in the admission of evidence, and its decision will not be disturbed unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby. *State v. Issa*, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904. Moreover, "[u]nder Evid.R. 403 and 611(A), the admission of photographs is left to a trial court's sound discretion." *State v. Nields*, 93 Ohio St.3d 6, 25, 2001-Ohio-1291, 752 N.E.2d 859. "Even relevant evidence may be excluded under Evid.R. 403(A), if its 'probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.'" *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 91, quoting Evid.R. 403(A).

**{¶25}** We find that the trial court could have reasonably found that the probative value of the mug shot was outweighed by its prejudicial impact. The trial court recognized that the booking picture, which was taken three years prior to trial, "only tells a thousand words for the day that it was taken." Finding no abuse of discretion, appellants' third assignment of error is overruled.

**{¶26}** Appellants' fourth assignment of error provides as follows:

[IV.] The trial court abused its discretion by failing to permit the court's own expert psychologist to rely on the findings of the court's prior expert psychologist.

{¶27} Dr. Douglas Waltman from the juvenile court's diagnostic clinic conducted an updated psychological evaluation and was called to testify in the matter. The grandparents contest the trial court's ruling that Dr. Waltman could not rely on the findings of the initial evaluator, Dr. Frank Ezzo. Dr. Ezzo was not called to testify, and his report was not submitted into evidence at trial.

{¶28} Evid.R. 703 provides: "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." The Ohio Supreme Court has held that "[w]here an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." *State v. Solomon*, 59 Ohio St.3d 124, 570 N.E.2d 1118 (1991), syllabus. A doctor's opinion has been found to be "based on facts or data perceived by him" within the meaning of Evid.R. 703, despite being partially based on reports not in evidence, where the doctor also conducted a personal examination. *Id.* at 126; *State v. Mack*, 73 Ohio St.3d 502, 512, 1995-Ohio-273, 653 N.E.2d 329; *Cox v. MetroHealth Med. Ctr. Bd. of Trustees*, 8th Dist. No. 96848, 2012-Ohio-2383, ¶ 57-59; *Czubaj v. E.B.P.*, 8th Dist. No. 65517, 1995 Ohio App. LEXIS 4522 (Oct. 12, 1995), *38-39.

{¶29} In the instant case, Dr. Waltman testified that he reviewed Dr. Ezzo's

evaluation for background information and that he reviewed affidavits from other professionals in the case, as well as other collateral information. However, Dr. Waltman also performed his own diagnostic and clinical interviews, psychological testing, and observational assessment. He testified that he personally interviewed father, both grandparents, and D.C.J. He also had the opportunity to conduct interactional interviews with both D.C.J. and his father and D.C.J. and the grandparents. His evaluation utilized psychological test results of father and the grandparents that included use of the Minnesota Multiphasic Personality Inventory-2nd Edition-RF (MMPI-2-RF) and the NEO Personality Inventory-Revised (NEO PI-R). Our review of the record reflects that Dr. Waltman relied heavily on his own observations and expertise in rendering his evaluation and that his expert opinion was primarily based on facts or data perceived by him. Accordingly, the trial court abused its discretion to the extent it precluded Dr. Waltman from basing his opinion, in part, on Dr. Ezzo's evaluation and in limiting the report and testimony of Dr. Waltman. Appellants' fourth assignment of error is sustained.

{¶30} The grandparents' fifth assignment of error provides as follows:

[V.] The trial court abused its discretion by permitting an improperly conducted *Daubert* examination of the court's own expert witness.

{¶31} At trial, father's attorney objected to the evaluation and testimony of Dr. Waltman pursuant to Evid.R. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Father's attorney's argument was based upon Dr. Waltman's reliance on affidavits from other professionals and other

collateral sources in the matter. It was requested at the very least, that Dr. Waltman's testimony be limited to his observational assessments and the psychological testing that was performed.

{¶32} Insofar as the grandparents argue that father did not file a pretrial motion in limine or request a pretrial hearing, they fail to cite, nor have we found, any legal authority requiring that a *Daubert* objection be raised prior to trial.

{¶33} "Trial courts have broad discretion in determining the admissibility of expert testimony, subject to review for an abuse of discretion. * * * In general, courts should admit such testimony when material and relevant, in accordance with Evid.R. 702 * * *." *Terry v. Caputo*, 115 Ohio St.3d 351, 2007-Ohio-5023, 875 N.E.2d 72, at ¶ 16.

{¶34} Evid.R. 702, which governs expert testimony, provides the following:

A witness may testify as an expert if all of the following apply:

(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

(C) The witness' testimony is based on reliable scientific, technical, or other

specialized information. * * *.

{¶35} In *Daubert*, 509 U.S. 579, 125 L.Ed.2d 469, 113 S.Ct. 2786, the United States Supreme Court listed several factors to be considered in determining the reliability of scientific evidence but recognized that the inquiry is flexible. The Ohio Supreme

Court adopted the *Daubert* standard in *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 1998-Ohio-178, 687 N.E.2d 735.

{¶36} The United States Supreme Court later clarified that the *Daubert* standard of evidentiary reliability extends not only to "scientific" testimony, but to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The Court further recognized the flexible nature of the reliability inquiry and that the specific factors enumerated in *Daubert* do not all necessarily apply in every instance. *Id*. at 150-151. In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id*. at 150. Thus, the *Daubert* standard has been found to apply to all expert testimony, including from psychologists. *State v. Abner*, 2d Dist. No. 20661, 2006-Ohio-4510, ¶ 32; *see also In re Kaylee P*., 6th Dist. No. F-04-011, 2004-Ohio-3807; *In re Lauren P*., 6th Dist. No. L-03-1252, 2004-Ohio-1656.

{¶37} There is no question that Dr. Waltman was testifying to matters beyond the knowledge of a lay person and was qualified as an expert. The record reflects that Dr. Waltman was well qualified and had ample experience in clinical psychology and chemical dependency. He provided his educational background and testified that he has been a licensed clinical psychologist since 1985. He also has been a chemical dependency counselor for 17 years and is licensed to do chemical dependency evaluations. He has been a consultant with the juvenile court diagnostic clinic for approximately 15 years. He has a private practice and his areas of specialization are in

chemical dependency, domestic violence, anger management, and the assessment and treatment of children with attention deficit disorder.

{¶38} Dr. Waltman testified to the standard practices he follows for conducting his evaluations. He testified to the interactional interviews and psychological testing that he performs. He indicated that he also reviews any collateral information that is made available to him and that all parties are told that they may submit such collateral documentation.

{¶39} Dr. Waltman found that D.C.J. has behavioral problems that require special treatment. While Dr. Waltman considered the sworn affidavits of other professionals in the matter, his assessment was also based on his personal observations and expertise. Dr. Waltman conducted his own interviews, and he personally observed behavior of D.C.J. that was consistent with the diagnoses of the other professionals. Dr. Waltman testified that father did not agree with his son's diagnoses, that father took a very dim view of his son receiving any kind of treatment, and that he believed father would neglect his son's special needs.

{¶40} Dr. Waltman also found that father met the clinical criteria for alcohol abuse disorder. While the finding was based in part on information contained in Dr. Ezzo's report concerning father's continued alcohol use and uncorroborated information provided by the grandparents regarding father's drinking during D.C.J.'s visits, Dr. Waltman also relied on father's history of multiple alcohol-related arrests as well as the diagnosis of Netcare.

**{¶41}** Police reports regarding father's prior alcohol-related incidents, father's drug test results, and the Netcare assessment were matters admitted into evidence. *See* Evid.R. 703. Dr. Waltman agreed with the diagnosis by Netcare of Axis I, 305.00, alcohol abuse by history. Dr. Waltman recommended that father enter into a chemical dependency treatment program with a goal of obtaining stable sobriety from alcohol. He recommended that D.C.J. remain in the custody of the grandparents. His professional opinion is that it is "highly unlikely that [father] would meet [D.C.J.'s] special needs," that father's use of alcohol "would interfere with his ability to adequately care for his son and potentially would put his son at risk," and that father "has demonstrated a marked incapacity to work cooperatively with the grandparents."

**{¶42}** Our review of the record reflects that Dr. Waltman had ample qualification and experience, that he used accepted practices in performing his evaluation, that his findings were based on his personal observations as well as the use of his expertise in reviewing the affidavits of other professionals and other collateral matters, and that his testimony was relevant and reliable. Father was free to question Dr. Waltman concerning the documents and facts supporting his findings, and the court could assess the weight and credibility to be given to the conclusions reached by Dr. Waltman.

**{¶43}** As the Ohio Supreme Court has recognized,

> Relevant evidence based on valid principles will satisfy the threshold reliability standard for the admission of expert testimony. The credibility to be afforded these principles and the expert's conclusions remain a matter for the trier of fact. The reliability requirement in Evid.R. 702 is a threshold determination that should focus on a particular type of scientific evidence, not the truth or falsity of an alleged scientific fact or truth.

*State v. Nemeth*, 82 Ohio St.3d 202, 211, 1998-Ohio-376, 694 N.E.2d 1332. Moreover, "[t]he Staff Note to Evid.R. 702 directs that questions of reliability are to be directed at principles and methods used by an expert in reaching his or her conclusions, rather than at the correctness or credibility of the conclusions themselves." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 121.

**{¶44}** Accordingly, we find the trial court abused its discretion in limiting the testimony of Dr. Waltman and his report. Appellants' fifth assignment of error is sustained.

**{¶45}** Appellants' sixth assignment of error provides as follows:

[VI.] The trial court abused its discretion by failing to consider or admit the portion of the guardian ad litem's testimony and report pertaining to the allocation of parental rights and responsibilities.

**{¶46}** Upon the conclusion of the guardian ad litem's testimony at trial, father's attorney moved to strike the guardian ad litem's report and testimony. Father argued that the guardian ad litem failed to meet various duties set forth in Sup.R. 48(D) and that the court could not consider the recommendation of the guardian ad litem in determining the best interest of the child because the report was not admitted as an exhibit pursuant to Sup.R. 48(F)(2). After considering the arguments of counsel, the court denied father's motion "except as it relates to any statement as to what the guardian ad litem believes to be in the best interest of the child, as it was not offered, and therefore, it could not be moved into evidence, either in part or in whole, per Superintendence Rule 48."

**{¶47}** Sup.R. 48 states that its provisions "shall apply in all domestic relations and juvenile cases in the courts of common pleas where a court appoints a guardian ad litem to protect and act in the best interest of a child." Sup.R. 48(A). Sup.R. 48(D) sets forth various responsibilities of the guardian ad litem. Sup.R. 48(F) provides in pertinent part,

> A guardian ad litem shall prepare a written final report, including recommendations to the court, within the times set forth in this division. * * *
>
> (1) In juvenile abuse, neglect, and dependency cases and actions to terminate parental rights: * * *(c) Unless waived by all parties or unless the due date is extended by the court, the final report shall be filed with the court and made available to the parties for inspection no less than seven days before the dispositional hearing. * * *. A copy shall be provided to the court at the hearing. * * *.
>
> (2) In domestic relations proceedings involving the allocation of parental rights and responsibilities, the final report shall be filed with the court and made available to the parties for inspection no less than seven days before the final hearing unless the due date is extended by the court. * * * A copy of the final report shall be provided to the court at the hearing. The court shall consider the recommendation of the guardian ad litem in determining the best interest of the child only when the report or a portion of the report has been admitted as an exhibit.

**{¶48}** Assuming arguendo that Sup.R. 48(F)(2) applies to a juvenile court custody proceeding, we do not find that it was grounds for excluding the guardian ad litem's best interest determination. Because Sup.R. 48 is a general guideline that does not have the force of statutory law, the father does not have any substantive right to enforce it. *Rice v.*

*Rice*, 5th Dist. No. 10 CA F 11 0091, 2011-Ohio-3099, ¶ 40.   Thus, similar objections as

presented by father have been rejected by other courts:

> Rules of Superintendence are only general guidelines for the court to follow
> at its discretion and do not give rise to substantive rights.   Many courts
> have considered this particular argument in the context of application of this
> rule in parental rights cases and have dismissed the argument.   *Allen v.
> Allen*, 11th Dist. No. 2009-T-0070, 2010-Ohio-475, ¶ 29-31; *In re E. W.*,
> 4th Dist. Nos. 10CA18, 10CA19, 10CA20, 2011-Ohio-2123, ¶ 15; and *In re
> B.K.*, 12th Dist. No. CA2010-12-324, 2011-Ohio-4470, ¶ 23.

*In re K.V.*, 6th Dist. No. L-11-1087, 2012-Ohio-190, ¶ 27.

> **{¶49}** As explained by another court,

> The "Rules of Superintendence are designed (1) to expedite the disposition
> of both criminal and civil cases in the trial courts of this state, while at the
> same time safeguarding the inalienable rights of litigants to the just
> processing of their causes; and (2) to serve that public interest which
> mandates the prompt disposition of all cases before the courts."   *State v.
> Singer* (1977), 50 Ohio St.2d 103, 109-110, 362 N.E.2d 1216.   "They are
> not the equivalent of rules of procedure and have no force equivalent to a
> statute.   They are purely internal housekeeping rules which are of concern
> to the judges of the several courts but create no rights in individual
> defendants."   *State v. Gettys* (1976), 49 Ohio App.2d 241, 243, 360 N.E.2d
> 735.   *Accord State v. Navedo*, 11th Dist. No. 2007-L-094, 2008-Ohio-2324,
> at P18, citing *State v. Kowalski*, 11th Dist. No. 93-P-0057, 1995 Ohio App.
> LEXIS 1089, at *16-*17.

*Allen v. Allen*, 11th Dist. No. 2009-T-0070, 2010-Ohio-475, ¶ 31.

**{¶50}** In considering the arguments of counsel, the trial court referenced Cuyahoga

C.P. Loc.Juv.R. 20, which requires the guardian ad litem to file a written report in

permanent custody cases where a written report is prepared and requires the guardian ad

litem to perform his or her duties in accordance with Cuyahoga C.P. Loc.Juv.R. 17(G).

Loc.Juv.R. 20 places an obligation on the parties to provide the guardian ad litem with

any relevant information wished to be considered as part of the guardian ad litem's investigation. The enforcement of local rules is a matter within the sound discretion of the court. *Allen* at ¶ 33.

**{¶51}** In the present case, the guardian ad litem filed her report in November 2010, five months before trial. Both the court and counsel had the opportunity to question the guardian ad litem about her report. Further, the trial court in a proper exercise of discretion could have allowed the admission of the report over father's objection. Under these circumstances, we find the trial court abused its discretion in limiting the testimony and report of the guardian ad litem. Appellants' sixth assignment of error is sustained.

**{¶52}** Appellants' seventh assignment of error provides as follows:

[VII.] The trial court's decision regarding the allocation of parental rights and responsibilities was against the sufficiency and manifest weight of evidence.

**{¶53}** We have already found that the trial court committed numerous errors in the underlying proceedings. The court abused its discretion with regard to the form of questioning permitted with regard to father's testimony, by limiting the testimony and report of Dr. Waltman, and by failing to consider portions of the testimony and report of the guardian ad litem. We find that these errors were not harmless and that the grandparents were deprived of their right to a fair trial. Basic notions of due process and fairness require that we reverse and remand the case for a new trial. Accordingly, we do not need to make a determination of whether the court's judgment was supported by some

competent, credible evidence.   We overrule this assignment of error as moot.

**{¶54}** Appellants' eighth assignment of error provides as follows:

[VIII.] The trial court erred by refusing to conduct an in camera interview

pursuant to O.R.C. 3109.04(B)(1).

**{¶55}** In order to address the assigned error, we first must consider the applicable

law to a child custody action arising in juvenile court between a parent and nonparent.

**{¶56}** R.C. 2151.23(A)(2) vests exclusive original jurisdiction in the juvenile court

over custody disputes concerning "any child not a ward of another court of this state[.]"

This typically encompasses custody disputes between parents and nonparents.   *Scavio v.*

*Ordway*, 3d Dist. No. 17-09-07, 2010-Ohio-984, ¶ 18.   "[R.C. 2151.23], unlike R.C.

3109.04, does not state a test or standard to be used by the juvenile courts in determining

child custody cases."   *Hockstok v. Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781

N.E.2d 971, ¶ 15.   However, Ohio case law offers guidance on the issue.

**{¶57}** In custody cases between a parent and nonparent, there is an overriding

principle "that natural parents have a fundamental liberty interest in the care, custody, and

management of their children."   *Hockstok* at ¶ 16.   Further, a parent who is deemed

suitable has a paramount right to the custody of his or her minor child unless they have

forfeited that right.   *Id.* at ¶ 21.   Thus, "a finding of parental unsuitability has been

recognized * * * as a necessary first step in child custody proceedings between a natural

parent and nonparent."   *Id*. at ¶ 18.

**{¶58}** In *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), the Ohio

Supreme Court held:

> In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first making a finding of parental unsuitability — that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child.

*Id.* at syllabus. We emphasize that "[t]he appropriate analysis is whether the natural father is unsuitable as custodian, not whether someone else is *more* suitable." *In re S.M.*, 160 Ohio App.3d 794, 2005-Ohio-2187, 828 N.E.2d 1044, ¶ 31 (8th Dist.), McMonagle, J., concurring. Nonparents seeking custody have the burden of demonstrating a parent's unsuitability. *Scavio*, 3d Dist. No. 17-09-07, 2010-Ohio-984, at ¶ 26.

{¶59} Where a parent is found suitable for custody and the parent has not previously lost custody of the child to a nonparent, there is no need to further determine that a change in circumstances has occurred or that custody is in the best interest of the child. *Scavio* at ¶ 23. However, where a parent is found unsuitable, the juvenile court must determine whether an award of legal custody to the nonparent is in the best interest of the child. *See Reynolds v. Goll*, 75 Ohio St.3d 121, 124-125, 661 N.E.2d 1008 (1996). This is in accordance with R.C. 2151.23(F)(1), which requires that the juvenile court exercise its jurisdiction in child custody matters in accordance with R.C. 3109.04. R.C. 3109.04(B)(1), provides that in any original grant or subsequent modification of custody, the court shall consider the best interest of the child. Additionally, R.C. 3109.04(B)(1) instructs that the court "upon the request of either party, shall interview in chambers any

or all of the involved children regarding their wishes and concerns with respect to the allocation."

{¶60} In this case, the grandparents twice requested the trial court to conduct an in camera interview with D.C.J. Because the trial court would have to make a best interest determination if father is deemed unsuitable, this request was warranted under R.C. 3109.04(B)(1). The trial court is statutorily mandated to conduct such a hearing upon the request of either party. We also recognize that R.C. 2151.23 does not address whether the court should conduct an in camera interview of the child with regard to a suitability determination. Given the nature of the inquiry, we find an in camera interview was warranted under the circumstances of this case. Accordingly, we find the trial court erred by failing to conduct an in camera interview of the child. Appellants' eighth assignment of error is sustained.

{¶61} Finally, we admonish the lower court for failing to promptly handle the proceedings in this action. This matter was pending for more than three years before a judgment was rendered with numerous delays in the trial court's rulings on the matters before it. Trial courts should be mindful of the interest in achieving a prompt resolution in child custody matters.

Appeal No. 97776

{¶62} The guardian ad litem has presented two assignments of error for our review, which provide as follows:

> I. The trial court abused its discretion in failing to conduct a hearing on guardian ad litem fees as provided by Local Rule 17.

II. The trial court abused its discretion by reducing the hourly rate of the guardian ad litem.

**{¶63}** An order to compensate a guardian ad litem is reviewed under an abuse of discretion standard. *Robbins v. Ginese*, 93 Ohio App.3d 370, 372, 638 N.E.2d 627 (8th Dist.1994). Cuyahoga C.P. Loc.Juv.R. 17(D) provides in pertinent part:

> (1) Guardians ad litem shall be compensated at the authorized rate for in-court and out-of-court time not to exceed the maximum fee total in effect at the time of acceptance of the assignment. * * *.
>
> (2) Upon motion for guardian ad litem fees to be assessed to the parties, the Court shall conduct a hearing and determine if the fee sought by the guardian ad litem is reasonable and necessary and the amount each party shall contribute toward the fee. The Administrative Judge may, for good cause and with notice, modify said schedule in accordance with budget restraints.

Pursuant to Loc.Juv.R. 17(D)(3), the maximum compensation to which a guardian ad litem is entitled, is $250 per hour. Further, Loc.Juv.R. 17(D)(5) provides a mechanism whereby a GAL can be compensated for "extraordinary fees."

**{¶64}** In this case, the court found that the amount of the fees sought, which was at the rate of $175 per hour and totaled $19,109.50, was not reasonable "as the amount has no differentiation between out of court and in court hours." The court approved the award at a modified rate of $125 per hour for 34.8 hours of in-court services, and $75 per hour for 74.4 hours of out-of-court services, for a total fee of $9,930.

{¶65} The trial court did not hold a hearing, nor did it allow the guardian ad litem an opportunity to address the court before reducing the hourly rate for fees. Although the court found that the "the services provided were reasonable and necessary," it failed to explain how it formulated the modified rate or offer an adequate explanation for the application of a reduced rate.

{¶66} This court has previously recognized,

> [T]he following guidelines from Ohio Code Prof.Resp. DR 2-106(B) are useful to the situation at hand: 1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; 2) The fee customarily charged in the locality for similar legal services; 3) The amount involved and the results obtained; 4) The time limitations imposed by the client or by the circumstances; 5) The nature and length of the professional relationship with the client; and 6) The experience, reputation, and ability of the lawyer.

*In re Thomas*, 8th Dist. Nos. 86375 and 86939, 2006-Ohio-3324, ¶ 18. We also recognize that the domestic relations division sets the hourly rate for guardians ad litem at $125 per hour. Cuyahoga C.P. Loc.Dom.Rel.R. 35(E).

{¶67} While the trial court's determination is discretionary, we find the trial court abused its discretion by failing to conduct a hearing and in arbitrarily reducing the hourly rate for guardian ad litem's fees in this matter. Accordingly, we sustain the assignments of error and remand the matter for a hearing where the above guidelines should be considered.

Conclusion

{¶68} In 8th Dist. No. 97681, we find the trial court committed numerous errors in the trial of this matter that require us to reverse the decision of the trial court and remand the matter for a new trial.

{¶69} In 8th Dist. No. 97776, we find the trial court abused its discretion by modifying the guardian ad litem's fees without holding a hearing and by arbitrarily applying a reduced hourly rate to the services provided.

{¶70} Judgment reversed; case remanded for a new trial and a guardian ad litem fee hearing. The lower court is instructed to give this case expedited treatment upon remand.

It is ordered that appellants recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

COLLEEN CONWAY COONEY, J., CONCURS;
MELODY J. STEWART, P.J., CONCURS IN JUDGMENT ONLY