[Cite as *In re Lau.W.*, 2017-Ohio-7384.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Lau.W., A.W., Cai.W.,
Car.W., Las.W. Cat.W.

Court of Appeals No. L-17-1015

Trial Court No. JC 15248300

**DECISION AND JUDGMENT**

Decided:  August 29, 2017

* * * * *

Adam H. Houser, for appellant.

Angela Y. Russell, for appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal from the January 13, 2017 judgment of the Lucas County

Court of Common Pleas, Juvenile Division, which awarded permanent custody of the

minor children, Lau.W., A.W., Cai.W., Car.W., Las.W., and Cat.W. to appellee, Lucas

County Children Services ("LCCS"), and terminated the parental rights of appellant-mother, R.W.[1]  For the reasons set forth herein, we affirm.

{¶ 2} On June 8, 2015, LCCS filed a complaint in dependency and neglect, and a motion for a shelter care hearing, in which it alleged that the agency had received multiple referrals that the children were home alone and that mother left the children, then ranging in age from five to 14, for days at a time to be with her boyfriend in Kentucky.  The complaint further alleged that the home had a strong odor and was littered with garbage, standing water, dog feces, flies and dirty clothing and dishes.  After alleged persistent evasions about her whereabouts, mother admitted to being in Kentucky and stated that her car had broken down.  The complaint further stated that LCCS had previous referrals for the family based on domestic violence allegations, alleged sexual abuse of some of the children, and housing and hygiene issues.  The complaint stated that the husband/father's whereabouts were unknown but the family was from Michigan.  On the same day, the shelter care hearing was held and interim temporary custody was awarded to LCCS; the children were placed in foster care.

{¶ 3} After mother defaulted at the July 28, 2015 adjudication and disposition hearing, the children were found to be dependent, neglected, and abused.  Temporary custody of the children was awarded to LCCS.

---

[1] The parental rights of father, C.W., were also terminated.  Father is not a party to this appeal and we will not discuss the court's findings relative to him.

**{¶ 4}** The original case plan was filed on July 9, 2015, and recommended counseling services for the children. As to appellant, it noted that her whereabouts were still unknown. It required that appellant show an interest in her children and contact LCCS. Further, once she returned to the area she was to establish visitation at LCCS. Appellant returned to Toledo in early 2016; she was added to the case plan and was required to attend mental health and domestic violence counseling and obtain housing and employment.

**{¶ 5}** On April 5, 2016, LCCS filed a motion for permanent custody of the children. LCCS argued that appellant demonstrated a lack of commitment to her children and that she abandoned them. The motion stated that appellant did not contact the agency following the June 2015 removal of the children from the home until January 2016. Contact was made only after her boyfriend was accused of sex charges against some of her children. The matter proceeded to a trial on the motion on October 19, and December 1, 2016.

**{¶ 6}** LCCS presented the testimony of multiple witnesses. Clinical therapist Patricia Paul testified that appellant first met with her for counseling services on February 18, 2016. She met with appellant two times. Paul testified that appellant failed to attend two sessions and canceled a third. Paul testified that she last saw appellant on March 7, 2016. Paul testified that appellant did not successfully address her treatment plan.

3.

**{¶ 7}** Dr. Randall Schlievert, child abuse expert, testified that he evaluated all six children for suspected sexual abuse. One of the children alleged that appellant's boyfriend penetrated her with a brown dildo.  Her physical exam results were consistent with penetrating trauma.  The child also reported physical abuse by the children's father and appellant's boyfriend.  Although only one child reported sexual abuse by the mother's boyfriend, Schlievert testified that he recommended that none of the children have any contact with the alleged perpetrator.  Schlievert further recommended that the children have no contact with appellant or the children's father.

**{¶ 8}** Schlievert stated that some of the children's sexual knowledge was advanced in relation to their ages.  Many of them also reported sexual acting out, or "sexually reactive" behaviors among the siblings and that such behaviors were frequently seen as a response to "exposure, stressors, [or] prior sexual abuse."  Schlievert acknowledged that the reports were not corroborated among the children but that this was not uncommon where children are afraid to discuss sexual abuse.  Dr. Schlievert's reports for each child, dating from November 2015 through January 2016, were admitted into evidence.

**{¶ 9}** An LCCS assessment caseworker testified that the agency had received several referrals regarding the family.  The allegations included sexual abuse by the father which was indicated, but not substantiated; abuse by one child against some of the others which was unsubstantiated; sexual relations between two of the children which was unsubstantiated; and sexual abuse of a child by appellant's boyfriend, the abuse was substantiated.

4.

**{¶ 10}** The family's LCCS caseworker testified that on May 12, 2015, a call was received alleging that the children were home alone and that appellant was in Kentucky. Between June 2015 and December 2015, the caseworker tried calling appellant three times and left multiple messages. Appellant had no face-to-face contact with her children during this time; there were reports of some telephone contact with her oldest child.

**{¶ 11}** The caseworker testified that appellant contacted her by telephone on January 11, 2016, and left a voicemail. The caseworker stated that appellant kept calling until reaching her the next day. Appellant told the caseworker that the allegations against her boyfriend were false; the call was prompted by the boyfriend's arrest on rape charges. Appellant did state that she wanted to get her children back and that she had been stuck in Kentucky because her car broke down and she was trying to get money.

**{¶ 12}** The caseworker's next contact with appellant was on February 24, 2016, when she telephoned from a domestic violence shelter in Toledo. The two met in person on March 8, 2016. Appellant indicated her desire to get the children back and stated that she was receiving mental health counseling services. Appellant was told that she needed to complete mental health counseling, domestic violence services, parenting services, and obtain stable housing and income.

**{¶ 13}** Regarding her case plan, the caseworker testified that appellant was noncompliant with her initial counseling services; in September 2016, she reengaged in services. There was no record of appellant attending any domestic violence counseling.

5.

Appellant informed the caseworker that she attended some counseling in Findlay, Ohio, but did not complete the program.

{¶ 14} The caseworker noted that appellant had not obtained housing or employment. In June 2016, appellant moved to Findlay, Ohio, and lived with a friend because she believed she had better job opportunities there. Appellant was briefly employed at a diner but after moving back to Toledo, maintained no employment.

{¶ 15} The caseworker stated that appellant's supervised visitation at LCCS commenced on April 12, 2016. She appeared at 22 of the 27 scheduled visits. The caseworker discussed how each of the children was doing in foster care, school, and emotionally. The caseworker testified that LCCS was recommending that it receive permanent custody of all six children. As to appellant, the caseworker noted that appellant only contacted the agency, seven months after her children were in temporary custody of LCCS, to refute the sex charges against her boyfriend and that she failed to make any real progress on her case plan goals. The caseworker stated that permanent custody to LCCS was in the children's best interests.

{¶ 16} Appellant's child, A.W., testified regarding the alleged abuse perpetrated by her father. A.W. testified that she wanted to live with her mother and that her mother has never physically or sexually abused her. An in-camera interview was also conducted of Lau.W.

{¶ 17} Appellant presented the testimony of her maternal aunt, L.C., who stated that she felt that her niece deserved some "consideration" because she had been abused

6.

by her husband. L.C. also felt that the boyfriend may have been abusive and "coerced" her to leave town. L.C. stated that she observed appellant parenting the children and that she was a "good mother." She stated that the children were groomed and dressed.

{¶ 18} The guardian ad litem ("GAL") testified she had been appointed for the children in June 2015. She testified regarding her investigation and stated that she believed it was in the children's best interests that permanent custody be awarded to LCCS.

{¶ 19} At the conclusion of the hearing, the trial court orally granted LCCS' motion. Its judgment entry was filed on January 13, 2017, and this appeal followed with appellant raising three assignments of error for our review:

1. The Guardian Ad Litem did not perform her duty under the Rules of Superintendence and her testimony should not have been allowed and should have been stricken.

2. The child did not receive effective assistance of counsel as counsel only met with the child once and did not present any witnesses or exhibits.

3. The finding that the child could not be placed with appellant within a reasonable time was against the manifest weight of the evidence.

{¶ 20} In her first assignment of error, appellant contends that the children's GAL failed to perform her duties as required under Rule 48(D) of the Ohio Rules of

7.

Superintendence. Appellant further contends that appellant's counsel was ineffective by failing to object to the testimony which should have been stricken.

{¶ 21} The rule provides, in part:

(D) Responsibilities of a guardian ad litem. In order to provide the court with relevant information and an informed recommendation regarding the child's best interest, a guardian ad litem shall perform, at a minimum, the responsibilities stated in this division, unless impracticable or inadvisable to do so.

* * *

(13) A guardian ad litem shall make reasonable efforts to become informed about the facts of the case and to contact all parties. In order to provide the court with relevant information and an informed recommendation as to the child's best interest, a guardian ad litem shall, at a minimum, do the following, unless impracticable or inadvisable because of the age of the child or the specific circumstances of a particular case:

(a) Meet with and interview the child and observe the child with each parent, foster parent, guardian or physical custodian and conduct at least one interview with the child where none of these individuals is present;

8.

(b) Visit the child at his or her residence in accordance with any standards established by the court in which the guardian ad litem is appointed;

(c) Ascertain the wishes of the child;

(d) Meet with and interview the parties, foster parents and other significant individuals who may have relevant knowledge regarding the issues of the case;

(e) Review pleadings and other relevant court documents in the case in which the guardian ad litem is appointed;

(f) Review criminal, civil, educational and administrative records pertaining to the child and, if appropriate, to the child's family or to other parties in the case;

(g) Interview school personnel, medical and mental health providers, child protective services workers and relevant court personnel and obtain copies of relevant records;

(h) Recommend that the court order psychological evaluations, mental health and/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court; and

(i) Perform any other investigation necessary to make an informed recommendation regarding the best interest of the child.

**{¶ 22}** Relying on the rule, appellant argues that the children's GAL failed to meet with her outside of the agency or see her at any of the 22 agency visits she attended since April 2016. Thus, appellant contends that the court committed plain error by allowing her testimony.

**{¶ 23}** This court has examined the application of Sup.R. 48 in custody proceedings. *In re K.V.*, 6th Dist. Lucas No. L-11-1087, 2012-Ohio-190. In *In re K.V.*, an action involving the transfer of legal custody of appellant's child to a cousin, the GAL did not file a report close in time to the dispositional hearing though she participated in all stages of the proceedings. *Id.* at ¶ 25. Appellant argued that it was plain error for the court to adopt the magistrate's decision without reviewing the written report by the GAL as required under Sup.R. 48(F)(1)(C). *Id.* at ¶ 21. Rejecting appellant's argument we concluded that the "Rules of Superintendence are only general guidelines for the court to follow at its discretion and do not give rise to substantive rights." *Id.* at ¶ 27. *Accord In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470; *In re D.C.J.*, 8th Dist. Cuyahoga Nos. 97681, 97776, 2012-Ohio-4154.

**{¶ 24}** In the present case, the GAL testified that her investigation consisted of frequent contacts with the children, foster parents, and caseworker. She also reviewed appellant's counseling reports, Dr. Schlievert's reports for all the children, and the LCCS' reports. The GAL stated that she had spoken with appellant at LCCS staffing meetings and had observed appellant with her children at two recent visitations. The GAL stated that she filed reports on July 20, 2015, August 12, and November 23, 2016.

10.

{¶ 25} The GAL stated that she unsuccessfully attempted to contact appellant during the eight-month period when she was in Kentucky. The GAL indicated that despite her telephone number being available through LCCS, appellant never contacted her.

{¶ 26} Based on the foregoing, we find that there was no error in the GAL's testimony being presented at trial. Appellant's first assignment of error is not well-taken.

{¶ 27} In appellant's second assignment of error she argues that A.W. received ineffective assistance of counsel. Specifically, appellant claims that counsel was appointed only a few months before trial, met with the children only once, failed to present any witnesses or exhibits, and permitted the child-client to testify.

{¶ 28} Appellant correctly states that a child in a proceeding to terminate parental rights is a party to the matter and has a right to counsel. *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 29. The test for ineffective assistance of counsel in a parental rights termination proceeding is the same as that used in criminal cases. *Jones v. Lucas County Children Servs. Bd.*, 46 Ohio App.3d 85, 86, 546 N.E.2d 471 (6th Dist.1988). To prevail on a claim of ineffective assistance, appellant must satisfy the two-prong test developed in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That is, appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687-688.

11.

{¶ 29} In this case, on August 16, 2016 a motion was filed requesting that the children be appointed counsel because five of the six minor children expressed wishes contrary to the recommendations of the GAL. On August 19, 2016, the motion was granted; the attorney was appointed on August 23.

{¶ 30} On October 19, 2016, prior to the start of the trial, counsel for the children informed the court that only one of the children, A.W., expressed a desire to return to appellant. Counsel then indicated that she would be representing A.W.'s interests at trial. At that point, appellant's and the father's counsel both objected to the attorney's representation based on the fact that she had only met with the children one time. Counsel requested a continuance for counsel to establish a "bond" with the children. Denying the request, the court questioned counsel; she indicated that she was "very confident" that she knew what their wishes were and that they were very comfortable speaking with her.

{¶ 31} Reviewing appellant's argument, we cannot find that counsel's representation was substandard. Counsel actively cross-examined LCCS' witnesses in an attempt to elicit testimony supporting her client's wishes. Appellant contends that having A.W. testify was evidence of counsel's ineffectiveness. We disagree. Reviewing A.W.'s testimony, she was simply expressing her wish to live with her mother. Further, appellant has failed to argue what additional witnesses A.W.'s counsel should have called or what evidence she should have presented. Finally, there is no demonstration that these

alleged failures affected the outcome of the proceedings. Appellant's second assignment of error is not well-taken.

{¶ 32} In appellant's third assignment of error, she contends that the trial court's judgment is against the manifest weight of the evidence. In order to terminate parental rights and award permanent custody of a child to a public services agency under R.C. 2151.414, the juvenile court must find, by clear and convincing evidence, two things: (1) that one of the enumerated factors in R.C. 2151.414(B)(1)(a)-(d) apply, and (2) that permanent custody is in the best interests of the child. R.C. 2151.414(B)(1). Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. The clear and convincing standard requires more than a preponderance of the evidence, but it does not require proof beyond a reasonable doubt. *Id.*

{¶ 33} "A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence." *In re A.H.*, 6th Dist. Lucas No. L-11-1057, 2011-Ohio-4857, ¶ 11, citing *In re Andy-Jones*, 10th Dist. Franklin Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 28. We recognize that, as the trier of fact, the trial court is in the best position to weigh the evidence and evaluate the testimony. *Id.*, citing *In re Brown*, 98 Ohio App.3d 337, 342, 648 N.E.2d 576 (3d Dist.1994). Thus, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being

13.

against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 34} R.C. 2151.414(B)(1)(a) provides that a trial court may grant permanent custody of a child to the agency if it finds that, in addition to the placement being in the best interest of the child:

> The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

{¶ 35} R.C. 2151.414(E) requires a trial court to find that a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent if any of 16 factors are met. Here, the trial court found that R.C. 2151.414(E)(1), (4), (14), and (16) applied. Those sections provide:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have

14.

substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

* * *

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

* * *

(16) Any other factor the court considers relevant.

{¶ 36} In reaching its findings, the trial court found that appellant failed to remedy the conditions which caused her children to be removed from the home by failing to attend and complete the counseling services set forth in the case plan. The court found that appellant demonstrated a lack of commitment to her children by leaving them alone

for eight months while residing in another state, she also allowed abuse of the children by her boyfriend to occur. Finally, the court found that appellant was unwilling to provide the necessities of food, shelter, and clothing for her children and that she was unwilling to prevent the abuse of her children.

{¶ 37} Appellant argues that the court's judgment was against the weight of the evidence because upon her return to Toledo she had been consistently visiting the children, was actively in services, and was looking for a home. Reviewing appellant's argument, we find that it does not refute the court's findings. Appellant does not dispute that she left her children for eight months and initially contacted LCCS in order to defend her boyfriend following his arrest. Once she finally returned to Toledo, she again left to live in Findlay for a period of time. Finally, appellant failed to complete any of the case plan requirements. Based on these findings the court concluded that an award of permanent custody to LCCS was in the children's best interests. We find that the trial court's judgment is supported by competent, credible evidence. Appellant's third assignment of error is not well-taken.

{¶ 38} On consideration whereof, we find that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                               _____
                                                    JUDGE

James D. Jensen, P.J.

                              _____
Christine E. Mayle, J.                                      JUDGE
CONCUR.

                              _____
                                                      JUDGE

17.