[Cite as *In re R.R.S.*, 2018-Ohio-990.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

IN THE MATTER OF:

R.R.S.

:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case Nos. 2016-CA-25/2017-CA-45

Trial Court Case No. C46814

(Custody Appeal from Juvenile Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of March, 2018.

. . . . . . . . . . .

ADAM R. FOGELMAN, Atty. Reg. No. 0073970, 285 East Main Street, Batavia, Ohio 45103
    Attorney for Appellants

JOHN MEEHLING, Atty. Reg. No. 0077630, 1158 Kauffman Avenue, Fairborn, Ohio 45324
    Attorney for Appellee Mother

. . . . . . . . . . . . .

HALL, J.

{¶ 1} B.S. and R.S. (paternal "Grandmother" and "Aunt" or "Appellants") appeal from the trial court's judgment entry overruling their objections to a magistrate's decision and returning legal custody of R.R.S., a minor child, to appellee J.M. ("Mother"), the child's biological mother.[1]

{¶ 2} Grandmother and Aunt advance five assignments of error. First, they contend the trial court applied an incorrect legal standard when it overruled their motion for legal custody and returned the child to Mother's care. Second, they claim the trial court erred in finding that Mother was a "suitable" parent. Third, they assert that the trial court erred in refusing to apply the "best interest of the child" standard. Fourth, they argue that the trial court erred in failing to assess witness credibility consistently. Fifth, they maintain that the trial court's judgment is against the manifest weight of the evidence. For their part, neither Mother nor T.S. ("Father") has filed an appellate brief.

{¶ 3} The record reflects that in September 2015 paternal Grandmother and Aunt filed a complaint for legal custody and moved for ex parte interim temporary custody of R.R.S., who was then seventeen months old. (Doc. #1, 3). In support, they alleged that Mother and Father were involved with illegal drugs and often appeared to be "stoned" or "high." The motion also alleged that the child's home was "filthy," that he was "always hungry and thirsty," that he was "always in filthy attire and usually in a soiled and/or wet

---

[1] The Appellants actually have filed separate notices of appeal from the magistrate's decision and the trial court's judgment entry overruling their objections to the magistrate's decision. After the first appeal, we remanded the case to the trial court for resolution of the objections. The Appellants then filed their second appeal after the trial court overruled the objections. On September 5, 2017, we sua sponte consolidated the two appeals. The operative ruling, however, is the trial court's July 21, 2017 judgment entry that disposed of the objections and found Mother entitled to legal custody.

diaper," that "his hair and body [were] dirty and soiled and he reek[ed] of body odor," that Father had a history of mental illness and was unemployed, that Mother and Father wanted to sell the child's baby formula for drug money, and that Grandmother had called Greene County Children Services twice but had not heard of any investigation taking place. The foregoing allegations were supported by an affidavit from Grandmother. (Doc. #4).

{¶ 4} A magistrate awarded emergency custody of R.R.S. to Grandmother and Aunt on September 28, 2015. (Doc. #7). Interim custody remained with Grandmother and Aunt pending a May 16, 2016 hearing before the magistrate. In connection with that hearing, a guardian ad litem filed a report recommending that legal custody be returned to Mother. (Doc. #30). Witnesses who testified at the May 16, 2016 hearing included Grandmother, Aunt, Mother, Father, the guardian ad litem, and others.[2] Based on the evidence presented, the magistrate filed a lengthy June 28, 2016 decision ordering legal custody to be returned to Mother with Grandmother and Aunt receiving visitation rights. (Doc. #42). Grandmother and Aunt filed objections and supplemental objections challenging various aspects of the magistrate's decision. (Doc. #44, 56). On July 21, 2017, the trial court filed its own fifteen-page judgment entry overruling all objections and upholding the magistrate's decision. (Doc. #62). The trial court concluded that legal custody of the child should revert to Mother. In support, it found insufficient evidence to establish that Mother was an "unfit" or unsuitable parent. Absent a showing of

---

[2] Parenthetically, we note that Father is the legal father of R.R.S. because he signed the child's birth certificate. However, he acknowledged during the hearing before the magistrate that "biologically" he is not the child's father. (Hearing Tr. at 215). He knows this because a DNA test was done sometime after he signed the birth certificate. (*Id.* at 216). In any event, he considers the child to be his own. (*Id.* at 215-216).

unsuitability, the trial court concluded that Mother was entitled to legal custody of her child as a matter of law. (*Id.* at 15). This appeal followed.

{¶ 5} In their first assignment of error, Grandmother and Aunt contend the trial court applied an incorrect legal standard when it overruled their motion for legal custody and returned R.R.S. to Mother's custody.

{¶ 6} Grandmother and Aunt specifically challenge the trial court's recitation of the test for determining parental unsuitability, which is one element of a legal-custody determination. In its ruling, the trial court stated that "a finding of unsuitability is not something to be decided flippantly or without factual and evidentiary support but rather it must be demonstrated to the court that an award of custody to the child's natural parent is inherently harmful." (Doc. #62 at 8). The Appellants dispute the trial court's suggestion that establishing unsuitability requires proof that awarding a parent custody would be "inherently harmful." Grandmother and Aunt insist that the focus in an unsuitability determination is on whether awarding a parent custody would be "detrimental," not "inherently harmful."

{¶ 7} Upon review, we find the Appellants' argument to be unpersuasive. Grandmother and Aunt recognize that a leading case in Ohio dealing with a parent's right to legal custody is *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977). In *Perales*, the Ohio Supreme Court observed that a parent "may be denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, *or that the parent is otherwise unsuitable that is, that an award of custody would be detrimental to the child.*" (Emphasis added). *Id.* at 98. The majority proceeded to recommend, however, that "courts dealing with the

general concept of suitability measure it in terms of the *harmful effect of the custody on the child*, rather than in terms of society's judgment of the parent[.]" (Emphasis added). *Id.* Thus, to determine whether a parent is unsuitable, a court must determine whether an award of custody to the parent would be detrimental to the child. In assessing that issue, the focus should be on the harmful effect of custody on the child rather than a judgment of the parent.

{¶ 8} Given *Perales'* admonition that parental unsuitability should be assessed in terms of the "harmful effect of custody on the child," we cannot say the trial court erred in stating that its focus would be on whether "an award of custody to the child's natural parent is inherently harmful." In reaching this conclusion, we find it noteworthy that the trial court referenced *Perales* when reciting the standard it was applying. In so doing, the trial court quoted the portion of *Perales* equating unsuitability with a finding that awarding custody to a parent would be "detrimental" to the child. (Doc. #62 at 8). Having reviewed the challenged portion of the trial court's ruling, it appears to us that the trial court simply was making the point—consistent with *Perales*—that its focus must be on the detriment, or harm, to the child, as opposed to a value judgment about Mother's morality, character, or lifestyle. We see no basis for reversal because we see nothing to suggest that the trial court misapprehended or misapplied *Perales*.

{¶ 9} In a second argument, the Appellants contend the trial court erred in taking into consideration, among other things, "the alleged potential harmful effect reunification would have on the child." (Doc. #62 at 9). Grandmother and Aunt quibble with the trial court's use of the word "reunification." They assert that "reunification" was not at issue because Mother and Father had been granted substantial parenting time with R.R.S. and,

therefore, "never lost unification." We disagree. The trial court plainly used the word "reunification" in the context of terminating the Appellants' emergency temporary custody and returning R.R.S. to the legal custody of Mother, thereby "reunifying" parent and child. We see no error. The first assignment of error is overruled.

{¶ 10} In their second assignment of error, Grandmother and Aunt contend the trial court erred in finding that Mother was a "suitable" parent. They raise two arguments in support, First, they assert that the trial court inexplicably found Father unsuitable but found Mother suitable despite the fact that Mother has lived with Father in the past and provides the same level of care for the child. Second, they challenge the trial court's finding that any adverse conditions previously existing in the child's life had been remedied by the time of the hearing before the magistrate.

{¶ 11} We quickly may dispose of the first argument. At the time of the hearing, Mother no longer was residing with Father. (Hearing Tr. at 202, 223). She was living with her own mother (the maternal grandmother) and only stayed at Father's house if R.R.S. was staying with paternal Grandmother and Aunt. (*Id*. at 250-251). Although the Appellants claim Mother's move happened shortly before the hearing, the fact remains that she was not residing with Father at the time of the magistrate's or the trial court's decision. In addition, the reasons for the trial court's continued unwillingness to declare Father a suitable parent did not apply to Mother. The trial court expressed concern about Father's continued substance abuse and unemployment. Although the Appellants' custody complaint alleged frequent drug use by Mother and Father, Grandmother conceded during the hearing that those allegations were incorrect and that she had no substance-abuse concerns about Mother. (*Id*. at 53, 61). Grandmother never saw Mother

drunk or "high," and her concerns about Mother were "not alcohol or drug related." (*Id.* at 53). Father, on the other hand, testified that he no longer was using drugs but failed a drug test immediately after the hearing. (*Id.* at 233; Doc. #31 at 1). Notably, the trial court did not return legal custody to Father and explicitly prohibited him from transporting the child anywhere. (Doc. #62 at 11). Unlike Father, who testified that he was unemployed, Mother also had stable employment at the time of the hearing, working thirty to thirty-five hours per week. (Hearing Tr. at 202, 251). Furthermore, the record contains evidence that Mother's residence was clean at the time of the hearing and that R.R.S. was clean, well nourished, and doing well when in her care. (*Id.* at 181-185; 286-288). In short, we find significant distinctions between Mother and Father that justify the trial court's divergent findings regarding each parent's suitability.

{¶ 12} Finally, we see no error in the trial court's determination that any adverse conditions impacting the child's welfare had been remedied by the time of the hearing before the magistrate. At the outset of the hearing, the Appellants' counsel expressed three concerns about the suitability of Mother and Father as parents for R.R.S. They involved (1) the parents' history of drug use, (2) instability in the parents' lives, and (3) the parents' failure to provide for the child's needs. (*Id.* at 7-8). We fully addressed the drug-use issue above. With regard to instability, the Appellants presented evidence to establish that Mother and Father had changed residences and jobs frequently. The trial court noted, however, that legal custody was being returned to Mother, who then was working nearly full time, with plans to return to Sinclair Community College after saving some money to establish greater stability. (Hearing Tr. at 238, 251-252). Mother also acknowledged that during the first year of R.R.S.'s life, she and Father had lived "several places." (*Id.* at 238).

As noted above, however, she was residing with her own mother at the time of the hearing. The guardian ad litem testified that Mother had been residing in that home at least since November 2015, which was when his involvement began. (*Id.* at 289; Doc. #30). The record also reflects that Mother is welcome to continue residing in her mother's home as long as she wishes. (Doc. #30 at 2-3). We note too that the guardian ad litem reasonably gave Mother and Father "a little bit of a break" with regard to their history of instability because of their youth. When the guardian ad litem became involved with the case, Mother and Father both were only twenty years old. (*Id.* at 3).

{¶ 13} Finally, with regard to caring for R.R.S.'s needs, the Appellants presented evidence, including their own testimony, to establish that the child had a history of being dirty, hungry, improperly clothed, and generally poorly looked after. Mother and Father largely disputed these claims. The record contains evidence that, at the request of the Appellants, representatives of Greene County Children Services made multiple trips to Mother's and Father's home while they were living together with the child and took no action beyond asking them to fix and clean-up a few things. (Hearing Tr. at 119, 211-213, 247-248). In any event, regardless of the prior conditions, the record supports the trial court's finding that Mother was providing for R.R.S. adequately at the time of the hearing. The guardian ad litem testified that he had no concerns with Mother's ability to parent the child. (*Id.* at 286). Although R.R.S. had a history of two prior skull fractures, Mother explained the circumstances surrounding both of them, the child received medical treatment both times, Greene County Children Services inquired about at least the second incident, and the guardian ad litem concluded that they both appeared to be accidents. (*Id.* at 239-244, 286). On the first occasion, Mother fell asleep with the child on

her chest when he was approximately three-weeks old. He rolled off and hit the wooden floor. (*Id.* at 239-240). On the second occasion, Mother was in Grandmother's finished basement with the child, who fell while trying to pull himself up. (*Id.* at 241-242).

{¶ 14} The guardian ad litem also testified that he had no concerns about the condition of the home where Mother was residing at the time of the hearing. (*Id.* at 292). The guardian ad litem added that R.R.S. looked healthy, well nourished, and well cared for by Mother. (*Id.* at 287-288, 294). The guardian ad litem noted ample food and other supplies for the child at Mother's residence. (*Id.* at 294).

{¶ 15} In short, the record contains more than enough evidence to support a finding that any prior concerns about R.R.S.'s welfare had been remedied by the time of the hearing, at least to the point that depriving Mother of custody was not justified. As explained more fully above, the question before the trial court was not whether the Appellants might be able to provide an objectively "better" environment for the child. Rather, before declaring Mother an unsuitable parent and continuing to deprive her of legal custody, the trial court was required to find that awarding her custody would be detrimental or harmful to the child. The trial court acted within its discretion in concluding that no such showing had been made. The second assignment of error is overruled.

{¶ 16} In their third assignment of error, Grandmother and Aunt assert that the trial court erred in refusing to apply the "best interest of the child" standard. They argue that after refusing to find Mother unsuitable, the trial court was obligated to consider whether returning R.R.S. to Mother's legal custody was in the child's best interest. Because the trial court did not conduct a best-interest analysis, Grandmother and Aunt contend its judgment is flawed and reversal is required.

{¶ 17} Upon review, we find the Appellants' argument to be without merit. Absent a finding of parental unsuitability, the trial court could not award legal custody of R.R.S. to Grandmother or Aunt. "[I]n a child custody proceeding between a parent and nonparent, a court may not award custody to the nonparent 'without first determining that a preponderance of the evidence shows that the parent abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child.' " *In re Hockstok*, 98 Ohio St. 3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 17, quoting *Perales* at syllabus. "Thus, a finding of parental unsuitability has been recognized * * * as a necessary first step in child custody proceedings between a natural parent and nonparent." *Id*. at ¶ 18. Because the trial court did not find Mother unsuitable, it could not award legal custody to non-parents Grandmother or Aunt. That being so, it had no reason to conduct a best-interest analysis. The third assignment of error is overruled.

{¶ 18} In their fourth assignment of error, Grandmother and Aunt argue that the trial court erred in failing to assess witness credibility consistently. They contend the trial court improperly overlooked "clear discrepancies" in the testimony of Mother and Father while finding Grandmother's testimony not credible based on "lesser discrepancies."

{¶ 19} With regard to Grandmother's credibility, the Appellants cite the trial court's treatment of two issues: (1) allegations of Mother's drug use and (2) the condition of the home Mother and Father shared with R.R.S. before the Appellants obtained temporary emergency custody. With regard to the first issue, the trial court noted allegations in the Appellants' complaint, supported by Grandmother's affidavit, about drug use by Mother.

At the subsequent hearing, however, Grandmother denied any concerns about Mother using drugs or alcohol. The trial court found Grandmother lacking in credibility based on this discrepancy. (Doc. #62 at 6-7, 10). With regard to the second issue, the trial court noted that, despite allegations of unsanitary conditions in the home shared by Mother and Father and the existence of some evidence to support those allegations, no one with first-hand knowledge had seen the inside of the home when temporary emergency custody was awarded to the Appellants. (*Id.* at 6).   For her part, Mother explained at the hearing that she became depressed and allowed the condition of the home to deteriorate after R.R.S. was placed with the Appellants. (Hearing Tr. at 258).

{¶ 20} Upon review, we see nothing objectionable about the trial court's treatment of either issue. Grandmother did allege in an affidavit in support of emergency temporary custody that Mother often used drugs and appeared "high" or "stoned." At the subsequent hearing, Grandmother denied having any concern about Mother using drugs or alcohol. As the trier of fact, the trial court was entitled to consider this discrepancy when evaluating Grandmother's credibility. As for the condition of the home Mother shared with Father, the trial court recognized the existence of evidence from which it might be inferred that the home was dirty when R.R.S. lived there. The trial court simply recognized, correctly, that the Appellants presented no evidence of the home's condition by anyone with personal knowledge at the time of the child's removal. Regardless, the critical issue below concerned the living conditions of Mother and child at the time of the hearing, not alleged deficiencies that may have existed earlier but no longer did.

{¶ 21} In a final argument under their fourth assignment of error, Grandmother and Aunt claim the trial court should have assessed the credibility of Mother and Father more

harshly. With respect to Father, they note that he denied still using drugs and then failed a drug test immediately after the hearing. The trial court recognized this fact, however, and relied on it when finding that Father continues to use drugs and declining to award him legal custody. (*Id.* at 7, 10-11). As for Mother, the Appellants contend she attempted not to disclose three occasions on which she allowed R.R.S.'s apparent biological father to see the child in violation of a court order. The magistrate acknowledged this issue, noting that "[w]hen confronted * * * Mother, although hesitant, was honest about her indiscretions." (Doc. #42 at 8). For its part, the trial court simply recognized that Mother had allowed contact between the child and the father in violation of a court order. (Doc. #62 at 5). Once again, the trial court was entitled to assess Mother's credibility as it saw fit and to give her testimony the weight it deemed appropriate. We see nothing objectionable about the trial court's treatment of the issue. The fourth assignment of error is overruled.

{¶ 22} In their fifth assignment of error, Grandmother and Aunt maintain that the trial court's judgment "as a whole" is against the manifest weight of the evidence. The substance of their argument, however, simply repeats their challenge above to the trial court's findings regarding Mother's suitability as a parent.

{¶ 23} The only distinction between the Appellants' second and fifth assignments of error is that the former addressed unsuitability under an abuse-of-discretion standard whereas this assignment of error addresses the issue under a manifest-weight standard. Specifically, Grandmother and Aunt contend the manifest weight of the evidence supports a finding that Mother is an unsuitable parent because she exposes R.R.S. to an environment of illegal drugs, leads an unstable life, and fails to provide for the child's basic

care. We fully addressed these issues above in our resolution of the second assignment of error. Based on that same reasoning, we believe the manifest weight of the evidence supports the trial court's determination that the Appellants had failed to establish Mother's unsuitability. The fifth assignment of error is overruled.

**{¶ 24}** The judgment of the Greene County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Adam R. Fogelman
John Meehling
Adam Krumholz
T.S.
Hon. Adolfo A. Tornichio