[Cite as *In re I.R.*, 2019-Ohio-2037.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| IN RE: I.R. | : | Appellate Case No. 28160 |
|  | : | Trial Court Case No. 2015-5396 |
|  | : | (Appeal from Common Pleas Court – Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of May, 2019.

. . . . . . . . . . .

KEITH R. KEARNEY, Atty. Reg. No. 0003191, 2160 Kettering Tower, 40 N. Main Street, Dayton, Ohio 45423
        Attorney for Defendant-Appellant

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, P.O. Box 24805, Dayton, Ohio 45424
        Attorney for Plaintiff-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} S.S. (maternal "Grandmother") appeals from the trial court's judgment entry sustaining objections to a magistrate's decision and awarding legal custody of her granddaughter, I.R., to the child's father, appellee V.G. ("Father").

{¶ 2} In her sole assignment of error, Grandmother contends the trial court abused its discretion in finding that she failed to prove, by a preponderance of the evidence, that Father is unsuitable to parent the child.

{¶ 3} The record reflects that I.R. was born to A.R. ("Mother") in February 2015. After the child's birth, Father established paternity. Thereafter, Mother was designated the residential parent and legal custodian. Mother resided with the child in the home of her parents, maternal Grandmother and Grandfather. Father initially received phased-in parenting time, but he eventually obtained parenting time under the standard order. In March 2017, Mother relapsed on drugs and failed to pick up I.R. at the end of Father's scheduled visitation. Following this incident, Grandmother received interim temporary custody and Father moved for legal custody. Grandmother filed a competing complaint for legal custody. A magistrate held a June 13, 2017 hearing on the custody issue. Thereafter, the magistrate filed a June 19, 2017 decision and order finding Mother and Father unsuitable to have custody of the child. (Doc. # 24.) The magistrate determined that awarding legal custody to either of them would be detrimental to I.R. Based on the evidence presented, the magistrate found it appropriate to award legal custody to Grandmother. Father was granted parenting time under the standard order.

{¶ 4} Father objected to the magistrate's decision. He challenged the magistrate's finding that awarding him custody would be detrimental to his child. (Doc. # 15.) Grandmother opposed the objection. (Doc. # 12.) On September 19, 2017, the trial court

filed a lengthy ruling in which it sustained Father's objection and designated him I.R.'s legal custodian. (Doc. # 9.) With regard to Father, the trial court found that he "is suitable for custody of the child because a preponderance of the evidence failed to show that an award of custody to him would be detrimental to the child." (*Id.* at 9.) The trial court also granted Grandmother parenting time under the standard order. Thereafter, the trial court filed an amended entry in which it corrected a minor clerical error in its September 19, 2017 ruling.

{¶ 5} On appeal, Grandmother contends that Father is unsuitable to parent I.R. for a number of reasons. She cites hearing testimony about Father having anger issues and the guardian ad litem's belief that he should undergo an anger-management assessment. Grandmother notes hearing testimony about an incident when Father became angry with the guardian ad litem in the child's presence. She also stresses his history of violent behavior, which includes convictions for involuntary manslaughter and felonious assault. Grandmother cites Mother's hearing testimony about Father previously being physically abusive to Mother and forcing Mother to have sex with him. Grandmother also cites testimony about Father smacking his granddaughter in the face. She points out hearing testimony that Father used to serve as Mother's "pimp," driving her to meet men for sex and splitting the money with her. Grandmother further asserts that Father provides inadequate care for I.R. Grandmother cites testimony from herself and Mother about the child returning from visits with Father hungry, thirsty, unkempt, and dirty. She also cites testimony that I.R. returns from Father's residence with dirty diapers, diaper rash, and "toxic baby oil" in the child's hair.

{¶ 6} In light of the foregoing evidence, Grandmother argues as follows with regard

to Father's suitability as a parent:

Father's unaddressed anger issues prohibit him from adequately being able to parent the child. Father's long history of incarceration for violent felonies and the persistent domestic violence issues with Mother even while Mother was pregnant with I.R. are still prevalent today. The Guardian ad Litem testified to witnessing Father's anger while I.R. was present. The Guardian ad Litem further testified that Father does not understand the effect his anger has on I.R. The Guardian ad Litem believed that Father's anger issues and his escalation of situations in the child's presence affect I.R. psychologically.

The trial court recognizes in its Judge's Order that the child experienced significant tragedy. But the Judge's Order completely ignores the source of that tragedy: Father. There is no evidence in the record to indicate that the child experienced tragedy with Grandmother, Mother, or any other person other than Father. For the trial court to find that the child has experienced significant tragedy in her short life, the only conclusion that can be made is that Father is the source of that tragedy. It is impossible to reconcile the finding that I.R. has experienced tragedy while also finding that Grandmother failed to prove Father was unsuitable to parent the child. That decision is unreasonable, arbitrary, and unconscionable.

In addition to Father's anger issues detrimentally affecting the child, there is also significant evidence in the record that shows Father does not provide adequate care for I.R. when the child is in his care. The child returns

from Father's parenting time hungry, thirsty, unkempt, and dirty. The child returns with a full diaper and diaper rash so severe the child cannot sit in bathwater. Father uses toxic oil in I.R.'s hair. When I.R. returns from Father's home, she requests food and water. All of these factors show Father cannot adequately care for I.R. to the child's detriment. The trial court's finding that Grandmother failed to prove by a preponderance of the evidence that Father is unsuitable to parent the child is again unreasonable, arbitrary, and unconscionable.

(Appellant's brief at 8-9.)

{¶ 7} This court will not reverse a trial court's award of legal custody absent an abuse of discretion. *In re C.B.*, 2d Dist. Montgomery No. 28113, 2019-Ohio-890, ¶ 17. The phrase "abuse of discretion" implies a decision by the trial court that is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). " 'It is not enough that the reviewing court, were it deciding the issue de novo, would not have found [the trial court's] reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result.' " *In re R.D.B.*, 2d Dist. Montgomery No. 28122, 2019-Ohio-1547, ¶ 18, quoting *AAAA Ents., Inc. v. River Place Community Urban Redev. Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 8} "[I]n a child custody proceeding between a parent and a nonparent, a court may not award custody to the non-parent 'without first determining that a preponderance of the evidence shows that the parent abandoned the child; that the parent contractually relinquished custody of the child; that the parent has become totally incapable of

supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child.' " *In re R.D.B.* at ¶ 20, quoting *In re Perales*, 52 Ohio St.2d 89, 369 N.E.2d 1047 (1977), syllabus. The only issue in the present case was whether an award of custody to Father would be "detrimental" to I.R.

{¶ 9} "Courts deciding a parent's 'suitability' * * * should focus on 'the harmful effect of [parental] custody on the child, rather than [on] society's judgment of the parent.' " *Id.*, quoting *Perales* at 98. In other words, the "focus must be on the detriment, or harm, to the child, as opposed to a value judgment about [the parent's] morality, character, or lifestyle." *In re R.R.S.*, 2d Dist. Greene Nos. 2016-CA-25 and 2017-CA-45, 2018-Ohio-990, ¶ 8. " 'The appropriate analysis is whether the natural [parent] is unsuitable as custodian, not whether someone else is *more* suitable.' " *In re R.D.B.* at ¶ 20, quoting *In re D.C.J.*, 2012-Ohio-4154, 976 N.E.2d 931, ¶ 58 (8th Dist.). A non-parent seeking legal custody bears the burden to establish a parent's unsuitability. *Id.* at ¶ 26.

{¶ 10} With the foregoing standards in mind, we do not find an abuse of discretion in the trial court's finding that Grandmother failed to prove Father's unsuitability. The testimony presented at the custody hearing established that Father and Mother both had troubled and regrettable pasts. As set forth above, Father had two serious felony convictions and was released from prison in 2011. When Father and Mother met, she was working as a prostitute to support a drug habit. Their meeting occurred when Father picked her up and offered her money for sex. She moved in with him shortly thereafter, and he assisted her in her prostitution activities. Father stopped living with Mother in November 2014 when she moved out.

{¶ 11} Following I.R.'s birth in February 2015, Father established paternity.

According to Father, he obtained his current employment in August 2015 and had remained employed full time since then. (Trial Tr. at 97-98, 100-101.) Father testified that he completed an anger-management program while in prison, that he successfully finished parole, and that he had not incurred any additional criminal charges. (*Id.* at 96-97.) Father testified that he stopped drinking and smoking marijuana when Mother became pregnant, that he was subject to random drug screens at work, and that he never had been "dirty" for a drug screen. (*Id.* at 104-105.) With regard to claims that he had been violent with Mother in the past or had forced her to have sex with him, Father denied her allegations. (*Id.* at 104, 131.) In addition, Father's adult daughter, A.M., a licensed cosmetologist, testified that the "oil" Father put in I.R.'s hair was a non-harmful "water-based gel to control frizz." (*Id.* at 82.)

{¶ 12} As for his ability to parent I.R., Father testified that he had parenting time under the standard order, which, at the time of the hearing, involved "week on/week off" visitation because it was summer. Father testified that he had been able to get I.R. to day care when he worked and that he had kept the child fed, clothed, and diapered. (*Id.* at 112.) When asked whether he was capable of caring for I.R., Father responded, "Yes. I've been doing it." (*Id.* at 120.) The guardian ad litem acknowledged that Father's residence was "suitable" for the child, that he had sufficient supplies, and that he appeared to be able to take care of I.R. (*Id.* at 14.) The guardian ad litem also recognized that Father had "stable income" and "stable housing," which was a two-bedroom apartment. (*Id.* at 19-20.) The guardian ad litem then added: "His home environment is fine. The apartment is fine. He interacts with her well. I don't think she's as relaxed, maybe, as she is at the other home. And that just—I've only seen him twice with her, so

that observation is not that relevant or that pertinent. I think he does pretty well with her." (*Id.* at 20.) In fact, the guardian ad litem had been considering "maybe a joint custody proposal." (*Id.* at 42.)

{¶ 13} The guardian ad litem decided against recommending joint custody, however, after Father became "agitated" when the guardian ad litem visited him on a Saturday shortly before the hearing. (*Id.* at 15, 43.) On that occasion, Father became upset and, according to the guardian ad litem, "unleashed 'a torrent of words about the unfairness of the ITC order, the GAL's role, and the maternal grandmother's involvement.' " (*Id.* at 15.) The guardian ad litem explained that "tensions were escalating," but the people in the room did not throw anything or curse. (*Id.* at 41.) The guardian ad litem "wasn't afraid" during the incident. (*Id.*) When asked why she was recommending legal custody to Grandmother, the guardian ad litem cited Father's agitation during the meeting and her general opinion that residing with Grandmother would be in I.R.'s "best interest." (*Id.* at 43.) The guardian ad litem later acknowledged that Father "really loves the child" and was "making an effort to provide for her." (*Id.* at 228.) Finally, at the conclusion of her testimony, the guardian ad litem reiterated that, based solely on the best interest of the child, she recommended legal custody to Grandmother. (*Id.* at 236.)

{¶ 14} For present purposes, however, the issue before us *is not* whether awarding legal custody to Grandmother would be in I.R.'s best interest. Grandmother very well may be able to provide a better home, better care, and a better overall environment for the child. As noted above, when allocating custody between a non-parent and a parent, the only issue is whether the parent is unsuitable to provide care. The fact that Grandmother

objectively might be able to provide better care or a better environment has no bearing on whether Father is a suitable parent. Determining whether Father is unsuitable turns solely on whether granting him legal custody would have a "harmful effect" on his child. *In re R.D.B.*, 2d Dist. Montgomery No. 28122, 2019-Ohio-1547, at ¶ 20.

{¶ 15} In our view, the trial court reasonably concluded that Grandmother failed to prove that awarding Father legal custody would have a harmful effect on I.R. Despite Father's questionable past, the record supports a finding that he loves the child and is providing adequate care and support for her. The record contains evidence that the child has adequate food, shelter, and clothing and that Father has stable income. At the time of the hearing, Father enjoyed standard parenting time with the child and was providing week-long care during the summer. The guardian ad litem thought he was doing well enough that joint parenting had been considered.

{¶ 16} Although Mother raised troubling claims about Father's past treatment of her, Father denied most of her allegations. Mother and Grandmother also testified that Father failed to keep I.R. clean and adequately nourished. With regard to the allegations of Father's past abuse of Mother, the trial court acted within its discretion in deciding whether it believed Father's denials or simply concluded that Mother's claims did not establish present unsuitability to care for I.R.[1] As for the testimony that I.R. often returned from Father's care hungry, dirty, and with a diaper rash, the trial court acted within its discretion in either disbelieving this testimony from Mother and maternal Grandmother or finding it sufficiently exaggerated or isolated so as not to compel a finding of unsuitability.

---

[1] The trial court provided a summation of the hearing testimony but did not indicate which party it believed when the evidence conflicted.

The trial court also reasonably could have concluded that the incident involving Father and the guardian ad litem shortly before the hearing did not support a finding of unsuitability. Father became "agitated" about the guardian's involvement in the case and Grandmother's receiving interim temporary custody. The incident does not appear to have been significant enough, however, to compel or even support a finding that Father was an unsuitable parent.

{¶ 17} On appeal, Grandmother cites the following statement by the trial court at the conclusion of its opinion: "The Court recognizes that this child has experienced significant tragedy and implores the parties to work together in the best interest of the child." (Doc. # 9 at 9.) Grandmother contends Father is the obvious source of the "tragedy" and, therefore, that he cannot be a suitable parent. On this record, we disagree. We are unsure what the trial court meant when it referred to I.R.'s unspecified "significant tragedy." It seems likely, however, that the trial court was referring broadly to all of the circumstances of the case, including Mother and Father's separation and apparent inability to get along, Mother's drug relapse, and Father's custody dispute with Grandmother. In any event, we see no clear "tragedy" attributable to Father that would require the trial court to find that he is an unsuitable parent.

{¶ 18} Finally, we have reviewed the three cases Grandmother cites on appeal in support of her argument that Father is an unsuitable parent. We note, however, that analogizing to other cases is of limited usefulness given the fact-specific nature of the suitability determination and the substantial discretion a trial court has when making its decision. In any event, we find the cases Grandmother cites to be readily distinguishable. In two of them, the appellate court affirmed a trial court's determination that a father was

an unsuitable parent. The Seventh District upheld an unsuitability determination in *In re Medure*, 7th Dist. Columbiana No. 01 CO 3, 2002-Ohio-5035, where the evidence established that the father physically abused the children at issue by beating them with ropes. The children were afraid of the father and did not want him to have custody. The Ninth District upheld an unsuitability determination in *In re Adams*, 9th Dist. Wayne No. 01CA0026, 2001 WL 1338952 (Oct. 31, 2001), where the evidence established, among other things, that the father had criminal charges pending against him and lacked stable housing and employment. In the third case, *In re M.B.*, 9th Dist. Summit No. 26004, 2012-Ohio-687, the Ninth District reversed the trial court and held that the evidence established the mother's unsuitability to parent her child. In that case, the mother remained in a violent and dysfunctional relationship with a man. The nature of the relationship caused the child to hide in her own home and to begin displaying "regressive emotional behavior." The mother nevertheless continued the relationship and placed her own needs ahead of the child's in various ways.

{¶ 19} In our view, *In re Medure*, *In re Adams*, and *In re M.B.* are distinguishable on their facts, and they do not establish an abuse of discretion in the trial court's award of legal custody to Father. To the contrary, we believe the trial court reasonably determined that Grandmother failed to prove, by a preponderance of the evidence, that Father is unsuitable to parent I.R. Therefore, the trial court did not err in awarding Father legal custody.

{¶ 20} Grandmother's assignment of error is overruled, and the judgment of the Montgomery County Common Pleas Court, Juvenile Division, is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.


Copies sent to:

Keith R. Kearney
Marcy A. Vonderwell
A.R.
Hon. Anthony Capizzi